Dwight Douglas JELKS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 45A03–9903–CR–96.

Court of Appeals of Indiana.

Dec. 13, 1999.

---

Nathaniel Ruff, Crown Point, Indiana, for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Liisi Brien, Deputy Attorney General, Indianapolis, Indiana, for Appellee.

## OPINION

KIRSCH, Judge

After a jury trial, Dwight Douglas Jelks was convicted of auto theft,[1] a Class D felony and was adjudged to be a habitual offender.[2] He now appeals, presenting the following issues for review:

I. Whether the trial court erred when in the course of polling the jury it engaged in an extended colloquy regarding the elements of the charged crime, the State's burden of proof, and the role of a juror.

II. Whether sufficient evidence supports his conviction for auto theft.

We reverse and remand.

### FACTS AND PROCEDURAL HISTORY

On October 9, 1997, Annie White reported her vehicle stolen. Six days later, Detective Brian J. Czerwinski of the Lake County Sheriff's Office received a tip about the location of a stolen car. He located White's vehicle parked on a street in Gary, Indiana and watched Jelks get into the vehicle. He then approached Jelks and arrested him. Jelks was charged with auto theft.

Jelks was tried by a jury. After the court read the jury's verdict, it polled the jury. When the trial court asked Juror Three if that was her verdict, she responded that it was not. The trial court further questioned the juror about her understanding of the case and then sent the jury

---

**1.** *See* IC 35–43–4–2.5.

**2.** *See* IC 35–50–2–8.

back for further deliberations. At the conclusion of these deliberations, the jury returned a guilty verdict. The trial court entered a judgment of conviction on the jury's verdict. Jelks now appeals.

## DISCUSSION AND DECISION

■ Jelks first argues that the trial court erred in engaging in colloquy during the polling of the jury. He contends that the trial court used the incorrect procedure in this situation where a juror expressed doubt about her verdict. The object of polling the jury is to give the parties an opportunity to ascertain with certainty that a unanimous verdict has been reached before the verdict is recorded and the jury is discharged. *Brown v. State,* 457 N.E.2d 179, 180 (Ind. 1983). IC 34–36–1–9 provides the proper procedure for ensuring a unanimous verdict in a jury trial. This statute is made applicable to criminal proceedings by IC 35–35–2–2. *See id.* It states:

> "When the jury has agreed upon a verdict, the verdict must be reduced to writing and signed by the foreman. When returned into court, the foreman shall deliver the verdict, and either party may poll the jury. If a juror dissents from the verdict, the jury shall be sent out to deliberate."

The trial court has a duty to send the jury back to correct a defective verdict before that verdict is accepted and the jury is discharged. *Grimm v. State,* 273 Ind. 21, 23, 401 N.E.2d 686, 687 (1980).

In this case, after the jury's verdict of guilty was read, Jelks asked the court to poll the jury. When the trial court asked Juror Three if the verdict he read was her verdict, she responded "no." Thus, the Record reflects that Juror Three expressed dissent from the jury's verdict. After defense counsel stated that he was not satisfied with the verdict, the following exchange took place:

> "THE COURT: Now, juror number three, I want you to respond loudly enough so we can hear you here. At

first, I indicated I am going to pole [sic] the panel and determine from each one of you individually whether or not the verdict of guilty that I read is, in fact, your verdict. And first you said no. And I want this clear now. Is this—did you believe from the evidence beyond a reasonable doubt that the defendant was guilty of auto theft?

BY JUROR THREE: No, sir, I didn't.

THE COURT: Why did you vote guilty?

BY JUROR THREE: Because I was trying to make—we were trying to discuss the reasonable doubt of the situation.

THE COURT: Well, you were discussing reasonable doubt and did you come to a point where you believed beyond a reasonable doubt that the defendant was guilty of the crime of auto theft? I am not quarreling with you, ma'am. We are simply trying to determine what occurred. We indicated the verdict must be a unanimous verdict.

BY JUROR THREE: Yes, I understood that. And we were discussing was he guilty of the auto theft. They said we have to agree did he know that the car was stolen when he got it.

THE COURT: Well, you had to believe beyond a reasonable doubt that he was operating a motor vehicle, exerting unauthorized control without the consent of the owner knowing the car was stolen. Is that what you folks all understood the issue to be?

· · ·

BY JUROR THREE: Your Honor, sir, what happens if one person doesn't agree with what everybody else is saying?

THE COURT: Then if you cannot agree, then you cannot return a verdict. You are what we call a hung jury. And the Court would have to declare a mistrial. And the matter would have to be retried at another date. Now, I don't want anyone to think—I thought this was pretty clear. That you are to main-

tain an open mind. And you are to hear the other people. But you're not to change. And I indicated, instructed you, you're not to change your verdict merely because you maybe [sic] in the minority or because you simply wanted to return a verdict. I am suggesting, Mr. Foreman, that you folks maybe go back in and continue to deliberate here and make sure we know what we are doing. You left me kind of uncertain and you seem to be equivocating. My question again to you, did you, not the other people, did you believe from the evidence presented to you during the trial and from the law that I gave to you, did you believe beyond a reasonable doubt that the State had met its burden of proving the defendant committed the crime of auto theft?

BY JUROR THREE: I had reasonable doubt.

THE COURT: You had reasonable doubt?

BY JUROR THREE: To me.

THE COURT: And you feel it would be productive to go back and continue talking?

BY JUROR THREE: No.

. . .

THE COURT: You understood [the State] didn't have to prove that he took the car from the owner? I think we talked about that. Their burden was to prove on the date he was apprehended in that car that he was exerting unauthorized control over a motor vehicle, did not belong to him, and that he knew it was stolen. He knowingly or intentionally was driving that car.

. . .

THE COURT: I am going to have you folks go back into the jury room, continue deliberating. I will give you the instructions back and whatever you returned to the bailiff, take back with you. They may take you down to lunch right now before you do anything else. We

are going to have you to continue to deliberate."

*Record* at 184–192.

■ We agree with Jelks that the trial court erred in engaging in this colloquy during its polling of the jury. The statute clearly provides that the remedy for juror dissent that arises during the polling procedure is to return the jury for deliberations, not engage in an extended colloquy about the elements of the crime, the State's burden, or the role of a juror. By doing so, the trial court tainted further deliberations and placed the defendant in a position of grave peril. Jelks' conviction on this verdict must be reversed.

■ Jelks next argues that there was insufficient evidence to support his conviction for auto theft. When reviewing the sufficiency of the evidence, we neither reweigh the evidence nor determine the credibility of witnesses. *Davis v. State*, 685 N.E.2d 1095, 1099 (Ind.Ct.App.1997). Instead, we look to the evidence most favorable to the verdict together with all reasonable inferences to be drawn therefrom. *Id.* If there exists substantial evidence of probative value to establish every material element of an offense beyond a reasonable doubt, we will not disturb the verdict. *Id.*

■ IC 35–43–4–2.5 provides that a person commits auto theft by knowingly or intentionally exerting unauthorized control over the motor vehicle of another person with intent to deprive the owner of the vehicle's value or use or a component part. The mere unexplained, exclusive possession of recently stolen property will sustain a conviction of theft. *Gibson v. State*, 533 N.E.2d 187, 188 (Ind.Ct.App.1989). Jelks acknowledges this principle, but contends that it does not apply here. Jelks argues that Annie White, the car's owner, could not say definitively when the car had been stolen. She first noticed that it was stolen on October 9, 1997. Jelks was apprehended with the car six days later. Therefore, he argues that because a sub-

stantial amount of time had passed between the theft of the car and the discovery of him in possession of it, the State was required to provide additional evidence of theft to secure Jelks' conviction.

The State provided such evidence in this case. White testified that she owned the car, that she did not know Jelks, and she had never given him permission to use the car. She also testified that the car's locks and ignition had been rekeyed so that her keys no longer worked when the car was returned to her. Detective Czerwinski testified that the license plate on the car did not match the vehicle's description. Further, the vehicle identification number on the dashboard had been visibly altered and did not match the information on the car's seat belt tag. Finally, he testified that Jelks was apprehended while driving the vehicle. Detective Peters testified that Jelks was unable to produce any proof that he owned the vehicle and that identifying stickers on the car's door had been removed. Detective Bilek testified that the serial numbers on various parts of the car did not match the vehicle identification number. Jelks' own statement was also admitted into evidence. In it, he stated that he had received the car from an individual that he knew to be a car thief. From this evidence, a trier of fact could reasonably infer that Jelks was guilty of auto theft. *See Muse v. State,* 419 N.E.2d 1302 (Ind.1981) (where defendant found with van stolen three weeks earlier, evidence of original registration and license plates inside the van and the fact that the defendant did not have proper registration for it was sufficient evidence to support conviction for auto theft); *Gibson,* 533 N.E.2d at 189 (where defendant found with car two days later, defendant's possession of a screwdriver, busted ignition, refusal to identify himself, and statement denying driving the car in spite of being apprehended leaving it were sufficient evidence to support defendant's conviction for auto theft); *Doe v. State,* 451 N.E.2d 1096 (Ind.Ct.App.1983) (where defendant found with stolen car in another state and steering column had been substantially damaged in order to operate the vehicle without the key, evidence was sufficient to support defendant's conviction); *Shank v. State,* 154 Ind.App. 147, 289 N.E.2d 315 (1972) (where defendant was found asleep in car twenty days after it had been stolen and defendant had been seen next to or in the car shortly before theft, evidence was sufficient to support conviction).

Jelks also contends that his possession of the car was not unexplained, as he offered an explanation. However, possession remains unexplained where the trier of fact rejects the explanation as being beyond a reasonable doubt. *Gibson,* 533 N.E.2d at 188. There was sufficient evidence supporting Jelks' conviction to allow retrial.

Reversed and remanded.

SHARPNACK, C.J., and RILEY, J., concur.