Steve T. **ALLEN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

No. 59A01–0004–CR–123.

Court of Appeals of Indiana.

March 7, 2001.

Rehearing Denied April 30, 2001.

---

Steven E. Ripstra, Jasper, IN, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Eileen Euzen, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge

Appellant, Steve T. Allen, challenges his convictions for four counts of Burglary,[1] all Class B felonies, four counts of Theft,[2] all Class D felonies, one count of Possession of Marijuana,[3] a Class A misdemeanor, and a determination that he is an Habitual Offender.[4] Allen presents six issues upon appeal, which we restate as follows:

(1) Whether the trial court erred in admitting evidence obtained in a warrantless search of Allen's home;

(2) Whether there was sufficient evidence to support the convictions;

(3) Whether the trial court erred in allowing into evidence testimony pertaining to Allen's prior misconduct;

(4) Whether the trial court erred in instructing the jury;

(5) Whether Allen was denied effective assistance of counsel; and

(6) Whether the trial court improperly sentenced Allen.

We affirm.

The facts most favorable to the jury verdict reveal that at around 11:50 a.m. on June 18, 1997, Orange County Deputy Sheriff Troy Lobosky and Indiana State

---

1. I.C. 35–43–2–1 (Burns Code Ed. Repl.1998).

2. I.C. 35–43–4–2(a) (Burns Code Ed. Repl. 1998).

3. I.C. 35–48–4–11 (Burns Code Ed. Repl. 1998).

4. I.C. 35–50–2–8 (Burns Code Ed. Repl.1998).

Trooper Bill Flick responded to a report of a traffic accident in Orange County. Upon arriving at the scene, Flick and Lobosky discovered that Allen had driven his truck off the highway and struck a utility pole. While at the accident scene, Flick and Lobosky noticed a set of Callaway "Big Bertha" golf clubs in a black golf bag in the back of Allen's truck. Phillip Weeks, an employee of Osborn's towing service, arrived to tow Allen's truck from the scene. After the police left the scene, Larry and Janet Jones drove by the accident scene and offered to give Allen a ride. Before leaving in the Jones' van, Allen removed the golf clubs, two rifles and a fireproof safe from his truck and placed them in the van. After Weeks had towed the truck to his employer's shop, Allen returned and displayed a pistol to Weeks.

After leaving the accident scene, Flick was called to the residence of Zoe Nelson. Ms. Nelson had left her home at 4:30 a.m. and returned at approximately 2:00 p.m. to discover that there had been a break-in and that a VCR and cash were missing from her home. Soon after, Flick and Lobosky were called to the home of Craig Crecelius. Mr. Crecelius had left home at 4:30 a.m. and his wife had left home at 6:30 a.m. A repairman stopped by the Crecelius house later that morning and noticed that a door to the house had been forced open. Mr. and Mrs. Crecelius returned home in the afternoon to discover that a Ruger .357 magnum handgun and a diamond ring were missing from their home.

Shortly thereafter, Flick and Lobosky responded to a burglary report at the residence of Steve and Kevin Pinnick. Both Steve Pinnick and Kevin Pinnick had left home between 5:00 a.m. and 5:30 a.m. Upon returning home that afternoon, Kevin called the police and reported that a window had been removed from his house. Kevin also reported that a nine-millimeter Beretta handgun, a Ruger .223 rifle with a

scope, a Nikon 35mm camera, a Pulsar watch, a set of Callaway golf clubs in a black leather bag with the words "Big Bertha" written on the side, and a Taylor golf club had been stolen. At this point, Lobosky and Flick discussed the golf clubs seen in Allen's truck and considered Allen as a suspect in the crimes.

The police received a report of yet another burglary at the home of Doug Partenhiemer and Melissa Kunkler at 5:35 p.m. Ms. Kunkler was the last to leave the home at 5:30 a.m. When Ms. Kunkler came home at approximately 3:00 p.m., she realized that someone had removed her bathroom window and entered the house, stealing a fireproof safe, a muzzle-loading gun with a scope, a compound bow, two bracelets and a necklace.

Sometime that evening, Flick stopped by Osborn's, where the tow-truck driver, Phillip Weeks, told Flick that Allen had displayed a pistol to him earlier that day. The next morning, Flick and Lobosky discussed Allen's parole status and Lobosky called Jason Thornberry, Allen's parole officer to inform him that Allen had been seen with a firearm. Allen was forbidden from possessing firearms as a condition of his parole. Thereafter, Thornberry, accompanied by Flick and Lobosky, went to Allen's home to conduct a search. Thornberry asked Allen for permission to search the house, and Allen consented. When Thornberry asked if Allen had any firearms, Allen indicated that he did.[5]

Thornberry searched Allen's home and discovered the VCR taken from the Nelson home, the golf clubs, a nine-millimeter handgun, a Ruger .223 rifle, and the watch taken from the Pinnick home, the fire safe, muzzle-loading gun, two bracelets, and necklace taken from the Partenhiemer–Kunkler home, and approximately twenty-five grams of marijuana. The police then arrested Allen, who claimed he had re-

---

**5.** During the suppression hearing, Allen denied that he gave consent or admitted to

possessing a firearm.

ceived the stolen property from an acquaintance, Ron Welch. Ron Welch consented to a search of his home, and gave Flick the Ruger .357 magnum handgun stolen from the Crecelius home.

Allen was charged with four counts of burglary, four counts of theft, one count of possession of marijuana, and being an habitual offender. Allen filed a motion to suppress the evidence obtained during the warrantless search of his home. On May 25, 1999, the trial court held a suppression hearing, and on June 7, 1999, denied Allen's motion. The trial court concluded that the search was reasonable as authorized under Allen's parole agreement, and found that Allen had consented to the search.

During trial, Flick testified that Allen, following his arrest, had offered to act as a confidential police informant and make controlled drug buys. Believing this to be in violation of the trial court's order concerning Ind. Evidence Rules 403 and 404(b), Allen objected and moved for a mistrial. The trial court denied Allen's motion for a mistrial, ruling that the comment referred to Allen's offer to work as a confidential informant.

Near the conclusion of the trial, Allen tendered a jury instruction regarding Receiving Stolen Property.[6] The trial court refused to give the instruction. The jury found Allen guilty of four counts of burglary, four counts of theft, and possession of marijuana. The jury later found that Allen was an habitual offender. On December 17, 1999, the trial court, finding four aggravating factors and no mitigating factors, sentenced Allen to a total of forty-five years imprisonment.

## I

### Warrantless Search

■ Allen first claims that the trial court erred by admitting evidence obtained during the warrantless search of his home, which he claims violated rights protected by the Fourth Amendment to the United States Constitution.[7] The admissibility of evidence is within the sound discretion of the trial court, and will not be disturbed by this court absent an abuse of this discretion. *Johnson v. State* (1999) Ind.App., 710 N.E.2d 925, 927. Upon review of a trial court's ruling on a motion to suppress evidence, this court will examine the evidence most favorable to the ruling, together with any uncontradicted evidence. *Id.* We will neither reweigh the evidence nor judge the credibility of witnesses. *Id.*

■ The Fourth Amendment to the United States Constitution provides that, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." The Fourteenth Amendment makes this protection applicable to actions by state officials. *Elkins v. United States* (1960) 364 U.S. 206, 213, 80 S.Ct. 1437, 4 L.Ed.2d 1669. Generally, searches should be conducted pursuant to a warrant supported by probable cause. *Purdy v. State* (1999) Ind.App., 708 N.E.2d 20, 22. However, the United States Supreme Court has determined that "[a] State's operation of a probation system ... presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." *Griffin v. Wisconsin* (1987) 483 U.S. 868, 873–74, 107 S.Ct. 3164, 97 L.Ed.2d 709.

■ This court has held that a probationer is entitled to limited protection of his privacy interests. *Polk v. State* (2000) Ind.App., 739 N.E.2d 666, 669. Indeed, the Fourth Amendment requires that a search of a probationer's home be reasonable. *Purdy, supra,* 708 N.E.2d at 23; *Griffin, supra,* 483 U.S. at 875, 107 S.Ct. 3164. "[A]ffording probationers lesser

---

6. I.C. 35–43–4–2(b) (Burns Code Ed. Repl. 1998).

7. We note that Allen presents no argument based upon the Indiana Constitution.

protections is predicated on the premise that probation officers, or police working with probation officers, are conducting searches connected to the enforcement of conditions of probation and not for normal law enforcement purposes." *Polk, supra* at 669. When a search is not conducted within the regulatory scheme of probation enforcement, a probationer's normal privacy rights cannot be stripped from him. *Id.* The State must demonstrate that a warrantless search of a probationer was a true probationary search and not an investigatory search. *Purdy, supra,* 708 N.E.2d at 23. "A probation search cannot be a mere subterfuge enabling the police to avoid obtaining a search warrant."[8] *Id.* Thus, courts must conduct a bifurcated inquiry. First, a court should determine whether the search was indeed a parole or probation search. If the search was not conducted within the regulatory scheme of parole/probation enforcement, then it will be subject to the usual requirement that a warrant supported by probable cause be obtained. If the search is a true parole/probation search, then a court must determine whether the search was reasonable.

The facts favorable to the ruling and the uncontradicted evidence show that Weeks told the police that Allen had displayed a pistol to him in a manner Weeks found intimidating. Lobosky then passed this information on to Allen's parole officer, Thornberry. Thornberry, accompanied by Flick and Lobosky, went to Allen's home, where Thornberry initiated and conducted a search.[9] Although the police had given Thornberry a list of the items reported missing from the burglarized homes, Flick testified that he did not expect to find any of the stolen items at Allen's house, and Thornberry testified that his main objective was to determine if Allen was in possession of a firearm in violation of his parole agreement. From this evidence, we agree with the trial court's determination that the search was a true "probation" search conducted pursuant to Allen's parole agreement. Record at 502. *See Purdy, supra,* 708 N.E.2d at 24 (holding that search was a valid probation search where police officer accompanied probation officer on a routine sweep of probationers and searched defendant's home only after he smelled marijuana smoke); *State v. Hajicek* (2001) 240 Wis.2d 349, 620 N.W.2d 781, (police officer cooperating with probation officer during search does not change a probation search into a police search).

Still, Allen argues that the search was unreasonable because it was based upon the uncorroborated hearsay of what Weeks had told Flick and Lobosky. "The threshold question is whether the facts and circumstances of the search made it unreasonable within the meaning of the Fourth Amendment." *Purdy, supra,* 708 N.E.2d at 24. To make this determination, we must balance the promotion of legitimate governmental interests against the individual's Fourth Amendment rights. *Id.* As per his parole agreement, Allen was "subject to reasonable search by [his] supervising officer ... if the officer ... has reasonable cause to believe that [Allen] is violating or is in imminent danger of vio-

---

8. Although *Griffin, Purdy,* and *Polk* dealt with searches of probationers, we believe their holdings to be equally applicable to parolees. "[A] person on probation occupies a status similar to that of a person on parole." *Carswell v. State* (1999) Ind.App., 721 N.E.2d 1255, 1262 (quoting *People v. Fortunato* (1975) N.Y.App.Div., 50 A.D.2d 38, 41–42, 376 N.Y.S.2d 723).

9. Thornberry testified that he was in charge of the search. Flick testified that, although he entered the home, he stood outside with Allen during the search. Flick also testified that when Thornberry discovered the stolen items, Lobosky did enter the house. However, Allen's claim that Lobosky testified that he and Flick searched Allen's home is incorrect. That portion of the record cited by Allen to support this claim merely indicates that Flick and Lobosky entered into Mr. Pinnick's house to have Pinnick identify the golf bag and clubs taken from Allen's home. The record indicates that Thornberry initiated and oversaw the search, and that, after some evidence had been found, Lobosky assisted Thornberry.

lating a condition to remaining on parole." Record at 981. Thus, Allen's parole agreement echoed the Fourth Amendment requirement that the search be reasonable.

In support of his contention that the search was not reasonable, Allen cites *Jaggers v. State* (1997) Ind., 687 N.E.2d 180, 183, and *Conwell v. State* (1999) Ind.App., 714 N.E.2d 764. *Jaggers*, however, dealt with the requirements of establishing probable cause to obtain a search warrant. As discussed above, searches of probationers and parolees are an exception to the requirement that warrants be supported by probable cause. The *Conwell* court held that the police officer did not have probable cause to search the defendant after a traffic stop based solely upon learning that he was a probationer and was in a high-crime area. *Id.* at 767. Again, however, the *Conwell* court was concerned with probable cause, not the reasonableness of a parole or probation search.

The facts of the present case can also be distinguished from those present in *Polk, supra,* and *Green v. State* (1999) Ind.App., 719 N.E.2d 426. In *Polk,* this court held that the police had no reasonable suspicion to stop a probationer who turned away from the police while walking in a high-crime neighborhood. *Polk, supra,* 739 N.E.2d at 669. In *Polk,* the police were not even aware of the defendant's probationary status. *Id.* In *Green, supra,* this court held there was no reasonable suspicion to stop the defendant, who was on work release, based only upon his presence in an area known for drug activity. 719 N.E.2d at 429.

In the present case, Allen was seen by Weeks in possession of a firearm. When this information was relayed by the police to Thornberry, he conducted a search with the assistance of the police to determine whether Allen had violated the terms and conditions of his parole agreement. We hold that this information was sufficient cause to conduct a parole search of Allen's home. When the police told Thornberry that Allen had been seen with a firearm, reasonable suspicion existed, and the probation search of Allen's home was reasonable within the meaning of the Fourth Amendment. *See United States v. Lewis* (1995) 10th Cir., 71 F.3d 358, 362 (confidential informant's tip, relayed to parole agent by police held sufficient to establish reasonable suspicion to support search of parolee's residence); *State v. Martinez* (1991) Utah App., 811 P.2d 205, 210 (reasonable suspicion to search probationer's apartment found where sheriff's deputy contacted defendant's probation officer concerning an alleged assault committed by defendant). The trial court did not err in admitting the evidence gathered as a result of the search of Allen's house.[10]

## II

### *Sufficiency of the Evidence*

Allen claims that, even if it were proper for the trial court to have admitted the evidence seized during the warrantless search of Allen's home, there

---

10. Although both Thornberry and Flick testified that Allen consented to the search of his home, Allen denied this. According to Flick's testimony at the suppression hearing, when asked if Thornberry could search his house, Allen said, "fine, go ahead, I know I'm on probation." Record at 1021. At trial, Flick testified that Allen had said, " 'Yeah, right, you know I'm on parole, and I need to do so.' 'So that's fine.' " Record at 1394–95. Consensual searches have been approved of by the United States Supreme Court. *State v. Friedel* (1999) Ind.App., 714 N.E.2d 1231, 1239; *Florida v. Jimeno* (1991) 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297. Even absent probable cause, one may validly consent to a warrantless search. *Friedel, supra* at 1239. When the validity of a search rests upon consent, the burden is on the State to prove that consent was obtained and freely and voluntarily given. *Id.* This burden is not satisfied by showing a mere submission to a claim of lawful authority. *Id.* Allen claims that even if he consented to the search, he was only submitting to a claim of lawful authority, such that true consent was never given. Regardless, even without Allen's consent, the search was reasonable, and therefore valid within the context of his parole agreement and the Fourth Amendment.

was insufficient evidence to convict him of any crime except possession of marijuana. The standard of review used by this court when reviewing claims of insufficient evidence is well settled. Upon appeal, this court will neither reweigh the evidence nor judge the credibility of witnesses. *Williams v. State* (1999) Ind.App., 714 N.E.2d 671, 672–73. We consider only that evidence favorable to the verdict and all reasonable inferences to be drawn therefrom. *Id.* at 673. We will affirm the conviction where there is substantial evidence of probative value from which the trier of fact could find guilt beyond a reasonable doubt. *Id.*

Allen was convicted of several counts of burglary and theft. Indiana Code 35–43–2–1 states that "[a] person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a Class C felony. However, the offense is . . . a Class B felony if . . . the building or structure is a . . . dwelling." (Burns Code Ed. Repl.1998). " 'Dwelling' means a building, structure, or other enclosed space, permanent or temporary, movable or fixed, that is a person's home or place of lodging." I.C. 35–41–1–10 (Burns Code Ed. Repl.1998). The statute defining theft reads, "A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony." I.C. 35–43–4–2(a) (Burns Code Ed. Repl.1998).

■■■■ A conviction of burglary or theft may be sustained by circumstantial evidence. *Williams, supra,* 714 N.E.2d at 673. In addition, Allen acknowledges the rule that the unexplained possession of recently stolen property provides support for an inference of guilt of theft of that property. *See Jelks v. State* (1999) Ind. App., 720 N.E.2d 1171, 1174; *Williams,*

*supra,* 714 N.E.2d at 673; *Gibson v. State* (1989) Ind.App., 533 N.E.2d 187, 188. It is also well established in the case law of this state that such unexplained possession of recently stolen property will support a burglary conviction so long as there is evidence that there was in fact a burglary committed. *Steele v. State* (1985) Ind., 475 N.E.2d 1149; *Ward v. State* (1982) Ind., 439 N.E.2d 156. *See Dedrick v. State* (1936) 210 Ind. 259, 2 N.E.2d 409; *Smith v. State* (1877) 58 Ind. 340. *But see Kidd v. State* (1988) Ind., 530 N.E.2d 287, 288 (suggesting that such possession will not suffice unless there is evidence that the "defendant participated in the burglary itself").

■■■■ Possession remains "unexplained" when the trier of fact rejects the defendant's explanation as being unworthy of credit. *Gibson, supra* 533 N.E.2d at 188. When determining whether possession was recent, "we consider not only the length of time between the theft and the possession but also the circumstances of the case (such as defendant's familiarity or proximity to the property at the time of the theft) and the character of the goods (such as whether they are readily salable and easily portable or difficult to dispose of and cumbersome)." *Morgan v. State* (1981) Ind. App., 427 N.E.2d 1131, 1133. Where the length of time between the crime and the possession is short, that fact itself makes the possession recent. *Id.* at 1133–34.

Allen admits that the items gathered from his house were identified as, or similar to, those stolen in the burglaries. Appellant's Brief at 21. However, Allen contests the State's assertion that his possession of these items was recent. Allen cites *Gibson, supra,* for the proposition that " 'recent' is a lapse of time of less than twenty-four (24) hours." 533 N.E.2d at 189.[11] According to Allen, the

---

11. In *Gibson,* this court construed *Kidd v. State, supra,* to have established the "outer limitation" of "recent" at twenty-four hours or less for all cases. 533 N.E.2d at 189. It

may well be, however, that the holding in *Kidd* looked to the totality of the circumstances there presented and held that *in that case,* unexplained possession of stolen proper-

time elapsed between the burglaries and the search of his home was anywhere from twenty-eight to thirty-four hours. Therefore, according to Allen, his possession of the stolen items was not recent, and there is insufficient evidence to support his convictions. However, Allen disregards the evidence which showed he was in possession of many of the stolen items within twenty-four hours of the burglaries.

At trial, the State introduced evidence that demonstrated that someone had kicked in a basement door at the Nelson home, entered, and taken a VCR. The evidence also showed that someone had entered into the Crecelius house by kicking in a door and taken a .357 magnum handgun. There was also evidence that someone had broken into the Pinnick house through a window and taken a set of Callaway "Big Bertha" golf clubs and a .223 rifle, and that someone had broken into the Partenhiemer–Kunkler house through a bedroom window and taken a fireproof safe box and a muzzle-loading gun.

Lobosky testified that he saw a set of Callaway golf clubs in the back of Allen's truck after the traffic accident on June 18, 1997. Flick testified that he saw the same golf clubs and a fire safe in the back of Allen's truck on that same day. Larry Jones, who gave Allen a ride from the scene of the accident, testified that he saw Allen remove a set of golf clubs, a fireproof safe, and a muzzle-loading rifle from his truck and place them in Jones' van on June 18. Janet Jones also testified that she saw Allen take a set of golf clubs, a

"fire box," and two guns from his truck on the day of the burglaries. Record at 1643. Phillip Weeks testified that he saw Allen remove a set of golf clubs and a "long gun" from his truck on June 18. Furthermore, Ron Welch saw Allen in possession of a .357 magnum handgun and a .223 rifle on the day of the burglaries. Thus, there was evidence presented that Allen was seen in possession of these stolen items on the same day that the burglaries occurred. This is sufficient to support Allen's convictions with regard to this property.[12] *Gibson, supra,* 533 N.E.2d at 188. However, because Allen was not seen in possession of the VCR stolen from the Nelson home until the time of the search, we must determine whether Allen's possession of the VCR was also "recent."

As stated above, Ms. Nelson left her home at approximately 4:30 a.m. Allen wrecked his truck at approximately 11:50 a.m. that same morning. Thus, the jury could have reasonably inferred that the burglary at the Nelson residence occurred somewhere between these two times. Although the exact time is unclear, the search of Allen's home took place the next morning. The jury could reasonably infer that the search of Allen's home occurred within twenty-four hours of the burglary. Furthermore, four homes were burglarized on the same day. Allen was seen in possession of items taken from three of those houses that very day. The VCR, along with items taken from the other three homes, was found in Allen's house the next morning. The circumstances of Allen's possession of the VCR support a determination that it was recently stolen. Therefore, Allen was in unex-

---

ty within one to four days following the burglary was insufficient for a burglary conviction. It may be that twenty-four hours is not the outer limitation for each and every case. *See Underhill v. State* (1966) 247 Ind. 388, 216 N.E.2d 344 in which the court observed: "Normally, an elapse of a few hours, or a day or two or even a week under some circumstances would create such an inference of guilt [of burglary], particularly if the property was concealed."

**12.** The .357 magnum handgun was taken from the Crecelius home, and therefore supports convictions on counts one and two of the information. The golf clubs and .223 rifle were taken from the Pinnick home and support convictions on counts three and four of the information. The muzzle-loading gun was taken from the Partenhiemer–Kunkler residence, and thus supports convictions on counts seven and eight of the information.

plained possession of the recently stolen property, and this is sufficient to sustain Allen's convictions of burglary and theft.

## III

### *Evidence of Prior Misconduct*

 Next, Allen claims that the trial court erred when it failed to grant his motion for a mistrial. According to Allen, certain portions of Flick's testimony violated the trial court's in limine order prohibiting references to Allen's prior criminal conduct. A trial court's ruling on the admission of evidence is reviewed upon appeal only for an abuse of discretion, and we will reverse only where the ruling is clearly against the logic and effect of the facts and circumstances before the trial court. *Jackson v. State* (1998) Ind., 697 N.E.2d 53, 54.

At trial, Flick testified that upon questioning, Allen told him that "he wanted to buy drugs for us and be a confidential informant. He'd done these things in the past." Record at 1400. Allen objected and moved for a mistrial, claiming that the testimony was in violation of Ind. Evidence Rule 404(b) and 403. The court denied Allen's motion. Rule 404(b) states:

> "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial ."

Allen claims that Flick's testimony violated the in limine order and Rule 404(b) in that it referred to prior drug-related activity. However, we agree with the trial court that Flick's testimony did not refer to any prior misconduct. Acting as a confidential informant for the police is not misconduct.[13] "Innocuous, legal behavior does not present the concerns Rule 404(b) was designed to address, and so need not be subject to such scrutiny." 12 ROBERT L. MILLER, JR., INDIANA PRACTICE § 404.207 (2d ed. 1995). To be sure, Flick's testimony could well have raised an inference that Allen had been in trouble with the police in the past. However, such testimony is not prohibited by Rule 404(b). *See Haak v. State* (1998) Ind., 695 N.E.2d 944, 947 (holding that, even if witness's testimony that she was afraid of the defendant raised an inference of prior bad acts by defendant, such an inference does not violate Rule 404(b)).

Allen also claims that Flick's testimony violated Ind.Evidence Rule 403 which provides, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." However, as the testimony did not directly refer to any prior misconduct on the part of Allen, we cannot say that allowing Flick's testimony into evidence was an abuse of the trial court's discretion. Furthermore, because we have decided that there was no error in the admission of Flick's testimony, we need not address Allen's claim that he should have been granted a mistrial because of this alleged evidentiary harpoon.

## IV

### *Jury Instruction*

 Allen's next contention is that the trial court erred by failing to instruct the jury upon the offense of receiving stolen

---

13. The reference to Allen having "done these things in the past" is susceptible to the interpretation that he had previously acted as an informant, not that he had previously engaged in criminal drug activity.

property. Allen claims that he was entitled to an instruction concerning receiving stolen property as an included offense of burglary. In *Wright v. State* (1995) Ind., 658 N.E.2d 563, the Indiana Supreme Court set forth a three-step inquiry for making the determination of whether a jury should be instructed on an included offense:

"First, a trial court must compare the statute defining the crime charged with the statute defining the alleged lesser included offense. If (a) the alleged lesser included offense may be established 'by proof of the same material elements or less than all the material elements' defining the crime charged, ... or (b) the only feature distinguishing the alleged lesser included offense from the crime charged is that a lesser culpability is required to establish the commission of the lesser offense, ... then the alleged lesser included offense is inherently included in the crime charged. If an offense is inherently included in the crime charged, then a trial court should proceed to step three below....

Second, if a trial court determines that an alleged lesser included offense is not inherently included in the crime charged under step one, then it must compare the statute defining the alleged lesser included offense with the charging instrument in the case. If the charging instrument alleges that the means used to commit the crime charged include all of the elements of the alleged lesser included offense, then the alleged lesser included offense is factually included in the crime charged, and the trial court should proceed to step three below. If the alleged lesser included offense is neither inherently nor factually included in the crime charged, then the trial court should not give a requested instruction on the alleged lesser included offense. Third, if a trial court has determined that an alleged lesser included offense is either inherently or factually included in the crime charged, it must look at the evidence presented in the case by both parties. If there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense and if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater, then it is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense. If the evidence does not so support the giving of a requested instruction on an inherently or factually included lesser offense, then a trial court should not give the requested instruction." *Wright, supra,* 658 N.E.2d at 566–67 (citations omitted) (footnotes omitted).

Based upon the first step of this analysis, it is clear that receiving stolen property is not an inherently lesser included offense of burglary. "A person who knowingly or intentionally receives, retains, or disposes of the property of another person that has been the subject of theft commits receiving stolen property." I.C. 35–43–4–2(b) (Burns Code Ed. Repl. 1998). The conduct described is a subclassification of the single crime of theft. *Gibson v. State* (1994) Ind., 643 N.E.2d 885. These elements cannot be established by proof of the same material elements or less than all the material of elements of burglary, which is defined as "break[ing] and enter[ing] the building or structure of another person, with intent to commit a felony in it." I.C. 35–43–2–1 (Burns Code Ed. Repl.1998). Therefore, we must proceed to the second step of the *Wright* analysis.

When comparing the charging information in the present case with the statute defining receiving stolen property, we conclude that receiving stolen property is not factually included in the burglary charges. The four burglary counts, which were identical except for the locations listed, stated that Allen, "did break and enter the dwelling of [the victims], with the intent to commit a felony therein to wit: Theft...."

Record at 33–35. The means used to commit burglary as alleged in the charging information do not include all of the elements of receiving stolen property. Therefore, the trial court was correct in refusing to give the requested instruction. *See Wright, supra,* 658 N.E.2d at 567.

## V

### *Ineffective Assistance of Counsel*

■ Allen next argues that the trial court erred in denying his motion to correct error, wherein Allen alleged that he was denied effective assistance of counsel due to certain inaction by his first trial counsel.[14] According to Allen, his first trial counsel was ineffective for failing to preserve the testimony of certain exculpatory witnesses.[15] Both of these witnesses, Russell Shelton and John Hackworth, had died before Allen's second trial counsel began his representation of Allen.

■ In challenging the trial court's denial of his motion to correct error, Allen claims that he was denied effective assistance of counsel. To prevail upon a claim of ineffective assistance of counsel, Allen must show both that his counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for his lawyer's alleged errors, the result of his trial would have been different. *State v. Holmes* (2000) Ind., 728 N.E.2d 164, 172 (citing *Strickland v. Washington* (1984) 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674), *reh'g denied, petition for cert. filed* January 29, 2001. A "reasonable probability" means a probability sufficient to un-

dermine confidence in the outcome. *Id.* Counsel's performance is presumed to be appropriate. *Benefiel v. State* (1999) Ind., 716 N.E.2d 906, 912, *cert. denied* (2000) — U.S. ——, 121 S.Ct. 83, 148 L.Ed.2d 45. Allen must offer strong and convincing evidence to overcome this presumption. *Id.* The second part of this test demands a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Holmes, supra* at 172 (citing *Strickland, supra* at 687, 104 S.Ct. 2052).

Allen's claim of ineffective assistance of counsel stems from the trial court's exclusion of the testimony of Jean Shelton. At trial, in an offer to prove, Ms. Shelton testified that she, her husband Russell, and John Hackworth had a conversation with Allen on the evening of June 18, 1997. According to Ms. Shelton, after discussing the accident he had been in earlier that day, Allen told Ms. Shelton that he had purchased some expensive golf clubs earlier that morning from a friend of Mr. Hackworth. Ms. Shelton also testified that Allen might have mentioned purchasing some guns from this same individual. Ms. Shelton testified under cross-examination that she was not present during the purchase of these items. Although admitting that the testimony was hearsay, Allen argued at trial that the testimony fell under the exceptions to the hearsay rule contained in Ind. Evidence Rules 803(1) and 803(3), but the trial court excluded the testimony. Upon appeal, Allen appears to concede that Ms. Shelton's testimony was excludable hearsay.[16] Appellant's Brief at

---

14. We note that a post-conviction hearing is normally the preferred forum to adjudicate a claim of ineffective assistance of counsel. *McIntire v. State* (1999) Ind., 717 N.E.2d 96, 101; *Woods v. State* (1998) Ind., 701 N.E.2d 1208, 1219, *cert. denied* (1999) 528 U.S. 861, 120 S.Ct. 150, 145 L.Ed.2d 128. Presenting such a claim often requires the development of new facts not present in the trial record. *McIntire, supra* at 101. "[A] defendant may decide to raise a claim of ineffectiveness of counsel on direct appeal, but, if so raised, 'the issue will be foreclosed from collateral re-

view.'" *Id.* at 102 (quoting *Woods, supra* at 1220).

15. Allen was represented by this counsel prior to trial. By the time of trial, he was represented by a different attorney. Neither of these attorneys is Allen's appellate counsel.

16. In conceding that Ms. Shelton's testimony was hearsay, Allen suggests that the hearsay was also not part of the "res gestae." Appellant's Brief at 29. The res gestae rule has not

29. Allen claims that Russell Shelton would have corroborated Ms. Shelton's testimony and that John Hackworth was present when Allen purchased the stolen property from another individual. Because Ms. Shelton's testimony was excluded as hearsay, Allen was unable to present his story to the jury. Thus, according to Allen, he was prejudiced by his first trial counsel's failure to preserve the testimony of the two deceased witnesses.[17]

Apparently, Allen filed the motion to correct error in an attempt to bring facts outside the record to the attention of the trial court and this court upon appeal. *Jewell v. State* (1993) Ind.App., 624 N.E.2d 38, 42. Ind. Trial Rule 59(H). Trial Rule 59(H) requires that "[w]hen a motion to correct error is based upon evidence outside the record, the motion shall be supported by affidavits showing the truth of the grounds set out in the motion and the affidavits shall be served with the motion." An affidavit submitted under T.R. 59 becomes a part of the record. *Jewell, supra* at 42. If such an affidavit is uncontradicted, the appellate court must accept its contents as true. *Id.* However, we will not consider any hearsay contained in the affidavits. *Id.*

Allen's motion to correct error was supported by the affidavit of his then trial counsel. In this affidavit, the second trial counsel stated that Allen told him that Allen had informed the first trial counsel that Russell Shelton and John Hackworth were potential substantive witnesses. The affidavit also states that Allen's wife told Allen's second trial counsel that she had attempted to get Allen's first trial counsel to depose these witnesses. The affidavit further reads:

"Undersigned counsel has been informed by [Allen] that if called to testify, that the deceased witnesses would have testified as follows:

a. John Hackworth—Mr. Hackworth was present in the company of Mr. Allen at the time that two individuals unknown to Mr. Allen sold him certain items of personal property without disclosing how or where said items of personal property had been purchased or acquired. It is believed that Mr. Hackworth would also verify for a portion of the morning of the date of the alleged commission of the crimes Mr. Allen's whereabouts.

b. Russell Shelton—[Allen] believes that Russell Shelton would have testified that he was at same social gathering referred to by Jean Shelton. [Allen] believes that Russell Shelton would have confirmed the conversation where Steve Allen disclosed his purchase of certain items of personal property including a set of golf clubs. [Allen] believes that Mr. Shelton would have been [sic] corroborated Ms. Shelton's testimony and assisted in providing a substantive affirmative defense to the charged offenses." Record at 6–7.[18]

Allen's statements to his second trial counsel were not made in court and were offered to prove the truth of the matter asserted. Thus, Allen's statements referred to in the affidavit are hearsay which we will not consider. *Jewell, supra*, 624 N.E.2d at 42. Furthermore, we are not persuaded by Allen's claim that his first trial counsel was ineffective.

Allen was charged on June 20, 1997, and trial was scheduled to begin on November

survived the adoption of the Indiana Rules of Evidence. *Swanson v. State* (1996) Ind., 666 N.E.2d 397.

17. The depositions of witnesses who are deceased may be admissible pursuant to Ind.Evidence Rule 804(b)(1).

18. In his motion to correct error, Allen's trial counsel stated that Allen told him that Hackworth was present when Allen purchased the stolen items. In his reply brief, however, Allen claims that Hackworth sold him the items. Reply Brief of Appellant at 2. However, the portion of the record cited in the reply brief is Ms. Shelton's testimony that Allen told her that he bought the items from one of Hackworth's friends, not Hackworth himself.

4, 1997. On July 11, 1997, the trial court appointed Allen's first trial counsel. According to Ms. Shelton's testimony, Hackworth died sometime in August 1997. Thus, when Hackworth died, trial was not set to begin for approximately two months. Without evidence suggesting that Allen's first counsel should have known that Hackworth was about to die, we cannot say that Allen has presented strong and convincing evidence that his first counsel's failure to preserve this testimony fell below an objective standard of reasonableness. The same applies with regard to the prospective testimony of Russell Shelton, who died in an automobile accident in late December 1997. At this time, Allen's trial had been continued until June 6, 1998. We fail to see how Allen's first counsel could have foreseen the death of a potential witness in a traffic accident over five months before trial.[19] Allen has not presented strong and convincing evidence that his first counsel's performance fell below an objective standard of reasonableness.

## VI

### *Sentencing*

■ Finally, Allen claims that the trial court erred in sentencing him to a total of forty-five years imprisonment. The trial court sentenced Allen to ten years incarceration on each of the four counts of burglary, the presumptive sentence for a Class B felony. I.C. 35–50–2–5 (Burns Code Ed. Repl.1998). The trial court then enhanced each of the four burglary counts by five years due to aggravating factors.[20] On count seven, one of the burglary counts, the trial court enhanced the already enhanced fifteen-year sentence by an additional thirty years for being an habitual offender.[21] Allen was sentenced to three years incarceration on each count of theft.[22] Allen was sentenced to one year for his conviction of possession of marijuana, the maximum allowed for a Class A misdemeanor. I.C. 35–50–3–2 (Burns Code Ed. Repl.1998). All sentences were to run concurrent with each other. Thus, Allen was sentenced to a total of forty-five years incarceration.

■ Upon appeal, Allen contends that the trial court erred by not considering certain mitigating factors. Specifically, Allen maintains that the court should have considered both Allen's remorse and the fact that he had a family and young daughter. Sentencing decisions are within the sound discretion of the trial court. *Bush v. State* (2000) Ind.App., 732 N.E.2d 250. This court will revise a sentence authorized by statute only if such sentence is manifestly unreasonable in light of the

19. Furthermore, it appears that Russell Shelton's testimony would also have been excluded as hearsay. Allen does not claim that Russell Shelton was present when Allen allegedly purchased the stolen items. Thus, had Russell Shelton testified concerning what Allen had told him, his testimony would also have been hearsay. Allen claims that Russell Shelton's testimony would not have been offered to prove the truth of the matter asserted by Allen, but instead would have only shown that Russell Shelton did not challenge the veracity of the story Allen told Ms. Shelton concerning how he came into possession of the property. Even if this were all Russell Shelton would have testified to, it would be meaningless without first introducing Ms. Shelton's inadmissible hearsay account of what Allen had told her.

20. I.C. 35–50–2–5 permits a Class B felony to be enhanced by not more than ten years.

21. The relevant portion of the habitual offender statute reads, "The court shall sentence a person found to be a habitual criminal to an additional fixed term that is not less than the presumptive sentence for the underlying offense nor more than three (3) times the presumptive sentence for the underlying offense. However, the additional sentence may not exceed thirty (30) years." I.C. 35–50–2–8(e) (Burns Code Ed. Repl.1998).

22. I.C. 35–50–2–7 provides that "A person who commits a Class D felony shall be imprisoned for a fixed term of one and one-half (1 1/2) years, with not more than one and one-half (1 1/2) years added for aggravating circumstances." (Burns Code Ed. Repl.1998). Thus, the trial court sentenced Allen to the maximum allowable on the four counts of theft.

nature of the offense and the character of the offender. *Id.* at 250–51; Ind.Appellate Rule 17(B).[23]

When a trial court imposes a sentence other than the presumptive sentence, this court will examine the record to ensure that the trial court explained its reasoning for selecting the sentence it imposed. *Saintignon v. State* (2000) Ind. App., 734 N.E.2d 711, 715. When a trial court deviates from the statutorily prescribed presumptive sentence, it must (1) identify all of the significant mitigating and aggravating circumstances; (2) state the reason why it considers each circumstance to be either mitigating or aggravating; and (3) articulate the evaluation and balancing of these circumstances to determine whether an enhanced or reduced sentence is appropriate. *Redmon v. State* (2000) Ind.App., 734 N.E.2d 1088, 1093. Only where we are persuaded that the mitigating evidence is both significant and clearly supported by the record will this court find that a trial court failed to identify a mitigating factor. *Id.* Upon review of the record, we hold that the trial court did not abuse its discretion in not finding the mitigating factors referred to by Allen.

First, Allen's allegation that he was remorseful is not clearly supported by the record. In the statement Allen made to the court during the sentencing hearing, Allen stated that he regretted that the crimes had occurred, but still denied responsibility. Allen did state that he was remorseful for being involved in the crimes, i.e., receiving stolen property. A good portion of Allen's statement merely attacked the sufficiency of the evidence used to convict him. We are unwilling to hold that the trial court abused its discretion in not considering Allen's remorse as a mitigating circumstance.

Next, Allen contends that the trial court should have considered hardship upon his dependents as a mitigating circumstance; specifically, Allen states that he had both a family and young daughter. The only evidence supporting this is the pre-sentence investigation report which notes that, at that time, Allen had a fifteen-year-old daughter who lived with her mother, Allen's ex-wife, in Georgia. There was no evidence that this child depended upon Allen for support. The report also indicated that Allen was currently married. This mitigating factor alleged by Allen is neither significant nor clearly supported by the record. *See Wilkins v. State* (1986) Ind., 500 N.E.2d 747, 749 (holding that trial court did not err by failing to consider alleged mitigating circumstance of hardship upon dependents where record indicated that the defendant had been separated from his wife at the time of the offense, there was no evidence of the defendant's pattern of prior support, and no showing that defendant's family would suffer undue hardship by defendant's incarceration). In sum, the trial court did not err by failing to find the mitigating factors claimed by Allen.

In the last sentence of his argument, Allen states, "A collective base of 73 years, although served concurrently, is manifestly unreasonable." Appellant's Brief at 34. However, as noted above, Allen's concurrent sentence was for a total of forty-five years. Allen, who had an extensive criminal history, was on parole from Florida at the time of the crimes. Allen had previously violated the terms of his work release while in Florida, and violated the terms of his parole by committing the crimes which are the subject of this appeal. Given the nature of the offense and the character of the offender, we cannot say that Allen's sentence is manifestly unreasonable.

### Conclusion

In summary, the search of Allen's home was a reasonable parole search; the evidence was sufficient to support the convictions; the trial court did not err by allow-

---

**23.** Effective January 1, 2001, this provision is designated as Ind.Appellate Rule 7(B).

ing testimony referring to Allen previously acting as a confidential informant for the police; the trial court did not err by refusing to instruct the jury regarding receiving stolen property; Allen was not denied effective assistance of counsel; and the trial court did not improperly sentence Allen.

The judgment is affirmed.

NAJAM, J., and BROOK, J., concur.