# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of establishing
the defense of res judicata, collateral
estoppel, or the law of the case.



**FILED**

May 08 2019, 9:23 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Philip R. Skodinski
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. Mackenzie
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

James Jacobs,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

May 8, 2019

Court of Appeals Case No.
18A-CR-2031

Appeal from the St. Joseph
Superior Court

The Honorable Jane Woodward
Miller, Judge

Trial Court Cause No.
71D01-1803-F5-55

**Friedlander, Senior Judge.**

[1] James Jacobs appeals his convictions of burglary and attempted burglary. We affirm.

Jacobs presents two issues for our review, which we restate as:

> 1. Whether there was sufficient evidence to sustain his convictions.
>
> 2. Whether the trial court erred when it responded to a question from the jury during deliberations.

Some time between 11:00 p.m. on March 12, 2018 and 12:00 a.m. on March 13, Jacobs was dropped off at a Motel 6 in Roseland, Indiana by his cousin, who paid for Jacobs' room for the night. Jacobs had been living with his cousin, but the living arrangement ended due to Jacobs' drinking.

At approximately 8:00 a.m. on March 13, Aaron Catanzarite, Roseland Chief of Police, was dispatched to CarX where he observed a panel missing from one of the garage doors. The garage had been ransacked and items, including tools and a laptop, were missing. He was then dispatched to Affordable Auto, where he observed that a glass door had been shattered. Like CarX, the office of Affordable Auto had been ransacked and items were missing, notably a large gray and blue toolbox.

Chief Catanzarite was then called to go to Cheers Lounge regarding an attempted burglary. Cheers Lounge is located across the street from the Motel 6 where Jacobs had stayed the previous night. Surveillance video showed a man removing wooden fence panels, entering Cheers' patio area, and attempting to gain access through the back door of the lounge. After reviewing Cheers' surveillance video, the Chief and his Assistant Chief, Timothy Witham,

noticed a man at the bus stop out in front of Cheers. He was wearing the same clothes as the man they had seen in the surveillance video, and he was sitting on a large blue and gray toolbox like the one taken from Affordable Auto just a few hours earlier. Upon investigation, the man, whom the officers identified as Jacobs, also had a sleeping bag with him. A search of the sleeping bag revealed it contained items reported stolen from CarX and Affordable Auto.

[6]     Jacobs was arrested and charged with two counts of burglary, both as Level 5 felonies,[1] and one count of attempted burglary, as a Level 5 felony.[2] At a jury trial, Jacobs testified that after leaving Cheers and walking to his uncle's house, he encountered a man having car trouble who asked if he would like to buy some tools. Jacobs testified that he bought a toolbox, tools, and a laptop for $65 and that he asked the man for a receipt. Jacobs then introduced, and the trial court admitted, a handwritten receipt signed with the name "Tim McDonald." *See* Ex. Vol. 3, p. 48. Jacobs further testified that he had the receipt in his pocket when he was arrested. During deliberations, the jury asked a question about the receipt, and the court responded that it was unable to answer the question. The jury convicted Jacobs on all counts, and the trial court sentenced him to five years on each count, to be served concurrently. Jacobs now appeals.

---

[1] Ind. Code § 35-43-2-1 (2014).

[2] *Id.*; Ind. Code § 35-41-5-1 (2014).

[7] Jacobs first contends that the evidence is insufficient to support his convictions. When we review a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. *Sandleben v. State*, 29 N.E.3d 126 (Ind. Ct. App. 2015), *trans. denied*. Instead, we consider only the evidence most favorable to the verdict and any reasonable inferences drawn therefrom. *Id.* If there is substantial evidence of probative value from which a reasonable fact-finder could have found the defendant guilty beyond a reasonable doubt, the verdict will not be disturbed. *Labarr v. State*, 36 N.E.3d 501 (Ind. Ct. App. 2015). Further, it is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Tongate v. State*, 954 N.E.2d 494 (Ind. Ct. App. 2011), *trans. denied* (2012).

[8] Jacobs does not challenge any specific element of the offenses that were required to be proven by the State beyond a reasonable doubt. Instead, he argues that he presented a credible, unrefuted explanation for his possession of the stolen items, and, besides the fact that he was found at the bus stop outside Cheers with the stolen property, there was no evidence to implicate him in the burglaries.

[9] A burglary conviction may be sustained by circumstantial evidence. *Allen v. State*, 743 N.E.2d 1222 (Ind. Ct. App. 2001), *trans. denied*. The unexplained possession of recently stolen property will support a burglary conviction providing there is evidence that there was in fact a burglary committed. *Id.* Further, possession remains unexplained when the trier of fact rejects the defendant's explanation as being unworthy of credit. *Id.*

[10]     Essentially, Jacobs asks us to reevaluate the credibility of the witnesses and reweigh the evidence, which we cannot do.  The State presented the surveillance video of Jacobs removing the wooden fence panels and attempting to open the back door of Cheers.  In his testimony, Jacobs admitted to pulling down the panels and checking the back door to see if it was open because he "was still wanting a beer."  Tr. Vol. 2, pp. 119-20.  The State's evidence additionally showed that, nearby on the same night, both CarX and Affordable Auto were burglarized.  Less than twenty-four hours later, Jacobs was found in the same clothes he had been wearing when he attempted to enter Cheers the night before, sitting at a bus stop in front of Cheers across the street from the motel where he had stayed the previous night.  In addition, he was in possession of the items that had been stolen from CarX and Affordable Auto.

[11]     Jacobs' self-serving explanation that he unknowingly purchased the stolen property from a stranded motorist and that the man wrote a receipt for the items in the middle of the night, while inventive, is implausible.  It was well within the jury's province to deem this evidence unworthy of credit.  *Brasher v. State*, 746 N.E.2d 71 (Ind. 2001) (stating it is within jury's province to judge credibility of witnesses).  Sufficient evidence supported Jacobs' convictions.

[12]     For his second allegation of error, Jacobs claims the court erred when it responded to a jury question during deliberations.  The pertinent portion of the trial transcript is as follows:

> THE COURT:  We're back on the record.  It's about 3:30.  The case went to the jury at about two o'clock.  Maybe ten minutes

ago we received this note.  Did the State know of the defendant's Exhibit B [handwritten receipt] before today?  I would propose responding:  I am unable to answer your question.  All the evidence that will be presented has already been provided to you.  Any problem with that, State?

[STATE]:  I'm fine with that.

THE COURT:  How about you, [Defense Counsel]?

[DEFENSE COUNSEL]:  I guess that's okay other than maybe parties exchange lists of witnesses and exhibits before trial.  They're asking whether they knew about the exhibit before the trial.  That's their question.

THE COURT:  Yes.

[DEFENSE COUNSEL]:  Well, whatever.

THE COURT:  I don't think I should start answering the question after telling them that I can't.

[DEFENSE COUNSEL]:  Okay.

Tr. Vol. 2, p. 168.

[13]  Jacobs failed to adequately preserve this issue for our review by failing to object when the trial court presented the jury's question to counsel and asked if they approved of its proposed response.  *See Butler v. State*, 622 N.E.2d 1035 (Ind. Ct. App. 1993) (defendant waived for appeal court's alleged error in responding to jury questions during deliberations when he failed to adequately object at time

answers were sent back to jury), *trans. denied* (1994). Here, Jacobs did not just fail to object; he affirmatively acquiesced in the court's response.

[14] Waiver notwithstanding, Jacobs' claim fails. In support of his argument, Jacobs cites Indiana Code section 34-1-21-6. That statute was recodified at Indiana Code section 34-36-1-6 in 1998 with no material difference in the language of the two versions. *See Fields v. State*, 972 N.E.2d 977, 981 n.1 (Ind. Ct. App. 2012), *trans. denied*. The current statute provides:

> If, after the jury retires for deliberation:
>
> (1) there is a disagreement among the jurors as to any part of the testimony; or
>
> (2) the jury desires to be informed as to any point of law arising in the case;
>
> the jury may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or the attorneys representing the parties.

Ind. Code § 34-36-1-6. Our Supreme Court has clarified that Section 34-36-1-6 is triggered only where (1) the jurors explicitly indicate a disagreement as to any part of the testimony or (2) the jurors desire to be informed as to any point of law. *Bouye v. State*, 699 N.E.2d 620 (Ind. 1998). The phrase "any point of law arising in the case" is narrowly construed and mandates that the trial court provide a discrete answer *only* when the jury question points to an error or

"legal lacuna" in the final instructions. *Fields*, 972 N.E.2d at 980 (emphasis added).

[15] Jacobs acknowledges that the procedure set forth in Section 34-36-1-6 is mandatory in only the two instances listed there, and he concedes that in the present case the jury expressed no disagreement as to any testimony. He asserts, however, that the jury's question concerning the receipt constitutes a desire to be informed as to a point of law and that, as such, the court was required to answer the question.

[16] Contrary to Jacobs' contention, given the narrow construction of the statutory phrase "any point of law arising in the case," we cannot say the jury's question in this case falls into that category. Therefore, the mandatory language of Section 34-36-1-6 does not apply here, and the court could exercise its discretion in determining whether to provide the requested information. *Foster v. State*, 698 N.E.2d 1166 (Ind. 1998).

[17] There is nothing in the record reflecting an abuse of discretion by the court in declining to answer the question. The parties presented all the evidence to the jury and instructed them as to the applicable law, and Jacobs does not assert that the court's instructions were erroneous. Thus, on the record before us, we conclude the trial court did not abuse its discretion when it declined to answer the jury's question and simply referred the jury to the evidence that had been presented.

[18]     For the reasons stated, we conclude the evidence was sufficient to support Jacobs' convictions and that the trial court did not err when it declined to answer the jury's question.

[19]     Judgment affirmed.


Riley, J., and Tavitas, J., concur.