Cecil Leon MUSE, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 680S180.

Supreme Court of Indiana.

May 11, 1981.

Felson Bowman, Greenwood, for appellant.

Linley E. Pearson, Atty. Gen., Frank A. Baldwin, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Cecil Leon Muse, was found guilty of theft, a class D felony, Ind.Code § 35–43–4–2 (Burns 1979 Repl.) and of being an habitual offender, Ind.Code § 35–50–2–8 (Burns 1979 Repl.). He was sentenced to concurrent terms of two years and thirty years respectively and now raises the following issues in this direct appeal:

1. Whether the evidence was sufficient to sustain the jury's verdict on the count of theft;

2. Whether the trial court erred by failing to read certain final instructions to the jury on the habitual offender count; and

3. Whether it was fundamental error to join two unrelated theft charges for the trial.

A summary of the facts from the record most favorable to the state shows that on March 19, 1979, a blue and white 1977 Volkswagen van belonging to Harold Bowley was taken from behind Bowley's garage. Bowley had left the keys in the van while he went inside his home to retrieve some papers. On his return, he found the van missing.

On June 22, 1979, Officer Steven Watts stopped a 1967 Ford station wagon for failing to display a vehicle inspection sticker. Defendant was driving this vehicle and was unable to produce a driver's license. He was placed under arrest for failure to have his vehicle inspected, for not having an operator's license, and for no registration for the vehicle. Pursuant to police procedures, Watts asked defendant for the keys to the vehicle so the car could be towed without damage. When defendant handed Watts his key chain, Watts removed the station wagon key and asked defendant if he would need the other keys. Defendant said he would need the keys to his Volkswagen van which was parked in front of his house.

Officer Watts became curious about the Volkswagen and drove to defendant's address. He was able to read the vehicle identification number through the windshield. When he checked this number with the police department, he discovered that the van had been reported as stolen. He consequently impounded the vehicle. In the glove compartment he found the registration certificate in Bowley's name. He also found a rent receipt, a light bill, and food vouchers in defendant's name. The license plate which had been on the van at the time it was stolen was found under the passenger seat. At trial, Bowley was able to positively identify the key to the Volkswagen as his key because he had drilled holes in it to distinguish it from his other Volkswagen keys.

At the time defendant was arrested, the officer noticed a lawn mower in the back of the station wagon. Defendant told the officer that he was in that neighborhood because he mowed lawns for a number of elderly individuals in that area. However, the officer was suspicious of that answer because there were no gas containers, gloves or other types of tools that would seem to be necessary for an individual involved in doing that type of work. Later, the lawn mower was found to be stolen and defendant was charged with its theft. The jury found him not guilty on that count apparently due to insufficient identification of the lawn mower by the state at trial.

I.

Defendant first alleges that there was insufficient evidence to support the conviction for theft. He argues that the evidence was wholly circumstantial and only showed that he had possession of the van. He contends that the evidence did not show that he had actually taken the van or that he knew it was stolen property. The elements of the crime of theft, at the time of the offense, were defined under Ind.Code § 35–43–4–2 (Burns 1979 Repl.) as follows:

"A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a class D felony."

This statute makes no distinction between the crimes of larceny and receiving stolen property. It is well settled that both the

exclusive possession of stolen goods as well as a knowledge that the goods were stolen may be proved by circumstantial evidence. *Ward v. State*, (1973) 260 Ind. 217, 294 N.E.2d 796.

As a court of review, we will neither reweigh the evidence nor judge the credibility of witnesses. *Wofford v. State*, (1979) Ind., 394 N.E.2d 100. Rather, we will look only to that evidence most favorable to the state and all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact, the verdict will not be overturned. *Poindexter v. State*, (1978) 268 Ind. 167, 374 N.E.2d 509. On review, this Court does not have to find that circumstantial evidence is adequate to overcome every reasonable hypothesis of innocence but only that an inference may reasonably be drawn therefrom which supports the finding of the jury. *Hall v. State*, (1980) Ind., 405 N.E.2d 530; *Parks v. State*, (1979) Ind., 389 N.E.2d 286.

▬▬ It is true that where any considerable length of time has elapsed from the time of the theft to the time of the arrest there must be some showing that defendant has had the exclusive possession of the property during that period of time. *Ward v. State, supra; Underhill v. State*, (1966) 247 Ind. 388, 216 N.E.2d 344. In the instant case, the evidence supports the inference that defendant had possession of the van shortly after the theft. The glove compartment contained a rent receipt dated April 6, 1979, and various food vouchers issued on April 25, 1979, all in defendant's name. The evidence also supports an inference that defendant knew the van was stolen. The registration certificate of the original owner, Bowley, was in the glove compartment and the original license plate had been removed and placed under the seat.

▬▬ Defendant argues that the presence of the registration and old license plate in the van and his open admission of the presence of the van at his home show that he was unaware of the van's stolen status since he didn't try to "hide" anything. This argument essentially invites us to reweigh

the evidence which we cannot do. It is well settled that unexplained possession of stolen property shortly after the time of the theft is a circumstance from which a jury is entitled to draw an inference of guilt. *Vaughn v. State*, (1971) 255 Ind. 678, 266 N.E.2d 219; *Bolton v. State*, (1970) 254 Ind. 648, 261 N.E.2d 841; *Cotton v. State*, (1965) 247 Ind. 56, 211 N.E.2d 158. It is not contested in this case that the van found in defendant's exclusive possession was a stolen vehicle. The circumstances pointed to defendant's possession of the van within three weeks of the theft and his continued use thereafter. Defendant did not testify and presented no evidence which would explain his possession of the stolen property. He did not have a proper registration for the vehicle. What inferences were to be drawn from these circumstances were matters for the jury and not this Court. *Vaughn v. State, supra*. From all of the circumstances outlined above, we find that there was sufficient evidence of probative value to support the jury's verdict.

## II.

▬▬ At the beginning of the second stage of the bifurcated proceedings in this case, the trial court read its preliminary instructions Nos. 1–3 to the jury. These instructions covered the relevant statutory law with respect to the habitual offender count and the reasons for providing for the bifurcated procedure. At the close of the presentation of evidence and final arguments on this count, the court read the following final instruction:

"You will now retire and deliberate your verdict upon his habitual criminal charge.

"Be faithful to the evidence and law as heretofore instructed."

No objection was made to this method of instruction.

Defendant now argues that the failure of the trial court to read more complete final instructions was fundamental error and requires reversal of his sentence on the habitual offender count. He cites a line of cases beginning with *Purdy v. State*, (1977) 267

Ind. 282, 369 N.E.2d 633, which he contends support his position. We have held that it is fundamental error where a trial judge refuses to read any final instructions to the jury but instead sends them to the jury room with instructions that the jury foreman read them aloud. This procedure is in clear violation of Ind.R.Tr.P. 51(A) and (B) and Ind.Code § 35–1–35–1 (Burns 1975). *Drake v. State*, (1979) Ind., 393 N.E.2d 148; *Williams v. State*, (1978) 269 Ind. 430, 381 N.E.2d 458; *Purdy v. State, supra.*

However, we find significant differences in this case. Our statute which provides for sentencing as an habitual offender clearly designates this proceeding as a "sentencing hearing." Ind.Code § 35–50–2–8 (Burns 1979 Repl.). Therefore, it is not necessarily governed by all the statutes and cases dealing with trial procedure. More significantly, the trial judge in this case did not refuse to read any final instructions but read one very short final instruction which defendant now alleges was inadequate. We have consistently held that while it is the duty of the trial court to properly instruct the jury upon all matters of law in the case, a defendant may not stand idly by while the court makes an error in instructing the jury and then claim, on appeal, that because of this error he is entitled to a new trial. *Law v. State*, (1980) Ind., 406 N.E.2d 1185; *Larkin v. State*, (1979) Ind., 393 N.E.2d 180; *Miller v. State*, (1978) 267 Ind. 635, 372 N.E.2d 1168. We find no fundamental error under the circumstances of this case where the trial court correctly instructed the jury on the applicable law in the preliminary instructions at the start of the habitual offender hearing and the entire hearing then took only approximately two hours. Since defendant failed to tender any final instructions himself and did not object to the trial court's own brief instruction, any error on this issue is waived.

### III.

■ Defendant finally argues that the joinder of two counts of theft involving the Volkswagen van and a lawnmower constitutes fundamental error. We disagree.

Since the offenses charged were of the same type their joinder was permitted under Ind.Code § 35–3.1–1–9(a)(1) (Burns 1979 Repl.) which provides:

"(a) Two [2] or more offenses can be joined in the same indictment or information, with each offense stated in a separate count, when the offenses:

(1) Are of the same or similar character, even if not part of a single scheme or plan . . . ."

Defendant has an automatic right to have the counts be tried separately if he makes a timely motion for severance. The statute clearly provides that:

"The right to severance of offenses or separate trial is waived by failure to make the motion at the appropriate time." Ind.Code § 35–3.1–1–12(a).

Defendant claims that the potential prejudice to defendants from the joinder of unrelated offenses is so great that they should not even be put in a position of having to request a separation. We disagree. The legislature provided adequate protection from prejudice for defendants when it gave defendants the automatic right to a severance whenever the offenses are joined solely because they are of the same or similar character. The burden is on defendant to make a timely motion for severance, but the court has no discretion to deny a severance under those conditions. Since defendant in this case failed to make a timely motion for severance, he has waived his right to have the offenses tried separately and we find no error here.

For all of the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.