**Jai BUNTIN, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0503–CR–211.

Court of Appeals of Indiana.

Dec. 15, 2005.

A. Frank Gleaves III, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Jai Buntin (Buntin) appeals his conviction for auto theft, a class D felony, Ind.Code § 35–43–4–2.5, and his sentence for theft, a Class D felony, I.C. § 35–43–4–2.

We vacate in part, and affirm in part.[1]

### ISSUES

Buntin raises two issues on appeal, which we restate as follows:

(1) Whether the evidence was sufficient to support Buntin's conviction for auto theft; and

(2) Whether the trial court properly sentenced Buntin in light of the holding in *Blakely v. Washington.*

### FACTS AND PROCEDURAL HISTORY

On September 25, 2004, Deandra Hughley (Hughley) reported her 1994 green Jeep Cherokee stolen from her residence in Indianapolis, Indiana. Five days later, on September 30, 2004, while on a call near the 2200 block of North Central Avenue in Indianapolis, Officer Eric Moncrief (Officer Moncrief) of the Indianapolis Police Department (IPD) observed Buntin walking toward a green Jeep Cherokee in the parking lot of a liquor store. When Buntin noticed Officer Moncrief in his marked

---

1. Oral arguments were held on October 13, 2005, at Martinsville High School in Martinsville, Indiana. We hereby thank counsel for their participation, as well as Martinsville High School for their hospitality.

vehicle, he turned around and went back inside the liquor store. Officer Moncrief proceeded to run a computerized check on the license plate number of the vehicle, and discovered that it had been reported stolen. Officer Moncrief then contacted other IPD officers, including Officer Anthony Priami (Officer Priami), and reported that he had spotted a possible stolen vehicle and needed assistance in surveillance of the lot.

Thereafter, during surveillance, Officer Priami observed the identified vehicle moving east of the liquor store, and initiated a traffic stop. Within a short time, Officer Moncrief arrived and advised the driver, identified as Buntin, of his *Miranda* rights. Officer Moncrief then questioned Buntin regarding the ownership of the vehicle. Buntin told Officer Moncrief that the vehicle belonged to his uncle, Lamont Hayes (Hayes). After further investigation, Officer Moncrief found that the vehicle was not registered to Hayes. Officer Moncrief asked Buntin again who the vehicle belonged to, and again Buntin was unable to identify the correct owner's name. Buntin was then arrested, and the vehicle was towed to Indy Tow where Hughley later identified the vehicle as hers.

On or about October 8, 2004, the State charged Buntin with Count I, auto theft, as a Class D felony, I.C. § 35–43–4–2.5, and Count II, operating a vehicle never having received a license, as a Class C misdemeanor, I.C. § 9–24–18–1. In addition, on November 11, 2004, the State charged Buntin in a separate case with theft, a Class D felony, I.C. § 35–43–4–2. The two cases were then consolidated before the trial court on January 28, 2005. Buntin pled guilty to the theft charge and a bench trial was held on the remaining charges of auto theft and operating a vehicle never having received a license. Evi-

dence was heard in part, and the trial was scheduled for conclusion on February 10, 2005.

On February 10, 2005, the trial court found Buntin guilty of Count I, auto theft, and not guilty of Count II, operating a vehicle never having received a license. Upon conclusion of the trial, the trial court proceeded to sentence Buntin for his theft and auto theft convictions. For his theft conviction, the trial court sentenced Buntin to three (3) years, a year and half at the Department of Correction and a year and a half probation. For his auto theft conviction, the trial court sentenced Buntin to a year and half at Community Corrections. Further, the trial court ordered that the two sentences run consecutively.

Buntin now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Sufficiency of the Evidence*

Buntin first argues that the evidence was insufficient to sustain his conviction for auto theft. Our standard of review for a sufficiency of the evidence claim is well settled. In reviewing sufficiency of the evidence claims, we will not reweigh the evidence or assess the credibility of the witnesses. *Cox v. State*, 774 N.E.2d 1025, 1028–29 (Ind.Ct.App.2002). We will consider only the evidence most favorable to the judgment, together with all reasonable and logical inferences to be drawn therefrom. *Alspach v. State*, 755 N.E.2d 209, 210 (Ind.Ct.App.2001), *trans. denied.* The conviction will be affirmed if there is substantial evidence of probative value to support the conviction of the trier of fact. *Cox*, 774 N.E.2d at 1028–29. A judgment based on circumstantial evidence will be sustained if the circumstantial evidence alone supports a reasonable infer-

ence of guilt. *Maul v. State,* 731 N.E.2d 438, 439 (Ind.2000).

█ To convict Buntin of auto theft, the State was required to show beyond a reasonable doubt that Buntin knowingly or intentionally exerted unauthorized control over the vehicle of another person, with the intent to deprive the owner of the vehicle's value or use. I.C. § 35–43–4–2.5. Specifically, Buntin now contends that the State merely showed that he possessed a vehicle that was previously stolen, but failed to prove beyond a reasonable doubt that he knowingly or intentionally exerted unauthorized control over the vehicle. The State, on the other hand, argues that Buntin's behavior at the liquor store, particularly walking back into the store upon noticing Officer Moncrief's marked police car, was indicative of his knowledge that the vehicle was stolen.

█ Generally, the unexplained possession of recently stolen property is sufficient evidence from which the trier of fact may infer the actual theft. *Brown v. State,* 827 N.E.2d 149, 153 (Ind.Ct.App. 2005), *reh'g denied, trans. denied.* Whether property was recently stolen is determined by examination of "not only the length of time between the theft and the possession," but also circumstances such as the defendant's familiarity or proximity to the property at the time of the theft, as well as the character of the goods. *Allen v. State,* 743 N.E.2d 1222, 1230 (Ind.Ct. App.2001). Where the length of time between the theft and the possession is short, that fact itself makes the possession recent. *Id.*

In *Kidd v. State,* 530 N.E.2d 287 (Ind. 1988), *reh'g denied,* our supreme court determined that evidence of possession of items stolen more than twenty-four hours previously, even when combined with a false explanation of the possession, was not sufficient to support a conviction for bur-

glary. In *Kidd,* the evidence revealed that the defendant sold stereo equipment that had been stolen one to three days prior to the sale. *Id.* at ·287–88. Also, the defendant in *Kidd* told the buyer of the stereo equipment that the equipment belonged to his girlfriend's brother and that he was selling it on his behalf. However, the stereo equipment was later identified as stolen from someone else's home. Despite these circumstances, the *Kidd* court reasoned that if burglary was sufficiently proven by possession of stolen property, along with a false explanation as to its possession, evidence supporting the crime of possession of stolen property would necessarily and inevitably equate to a conviction for burglary. *Id.* at 288. In its reasoning, we find that our supreme court was cautioning us to, not confuse possession crimes with actual crimes.

Similarly, in *Gibson v. State,* this court concluded that the defendant's unexplained possession of a car only two days after it was stolen was insufficient, by itself, to sustain a conviction of auto theft. *Gibson v. State,* 533 N.E.2d 187, 190 (Ind.Ct.App. 1989). In particular, we noted that the greater the lapse of time between the theft and the possession, the greater need there is for a showing of other circumstances to support a finding that the theft was "recent." *Id.* at 189. However, because we found corroborating evidence to support the conclusion that Gibson committed theft, we affirmed his conviction. First, the vehicle that Gibson was found in possession of had a damaged steering column, as if it had been started with a sharp instrument, and when Gibson was stopped, he had a screwdriver in his back pocket. Second, Gibson had no identification or car keys with him upon being stopped, and he refused to identify himself to police.

In the present case, we cannot find that the length of time between the theft of

Hughley's vehicle and Buntin's possession of the vehicle was short. Rather, the record indicates that Buntin was not found in possession of Hughley's Jeep Cherokee until five days after Hughley reported it missing. Nonetheless, as previously mentioned, evidence of other circumstances or the character of the goods may support an inference that the defendant stole the property. *Allen,* 743 N.E.2d at 1230.

In *Muse v. State,* our supreme court stated that when a considerable length of time has passed between the theft and the arrest, there must be some showing that the defendant has had exclusive possession of the property during that time. *Muse v. State,* 419 N.E.2d 1302, 1304 (Ind.1981). In *Muse,* the defendant was not found in possession of the stolen vehicle until three weeks after its theft, but dated receipts in Muse's name found in the glove compartment indicated that he had been using the vehicle for a period of time before his arrest. *Id.* at 1303. In addition, the original license plate had been removed from the vehicle and placed under a seat. *Id.*

Here, unlike in *Muse,* the record is devoid of any evidence that Buntin was in exclusive possession of the vehicle from the time it was stolen to the time he was arrested. Although five days would have given Buntin ample time to cover up the vehicle's stolen status, the license plate on the vehicle had not been modified, nor had the name of the vehicle's registrant been changed. Also, at trial, Buntin testified that even though he initially told police he borrowed the vehicle from his uncle, he actually rented it from a drug dealer the day he was arrested. Thus, unlike the defendant in *Kidd* whose explanation regarding ownership of the stereo equipment was proven false, Buntin explained on the stand that he lied to police about borrowing the car from his uncle because he did not want to reveal the fact that he gave money to a drug dealer.

Additionally, we find that the State failed to present any other corroborating evidence that Buntin stole the vehicle, such as that presented in *Gibson.* We do not find Buntin's behavior at the liquor store, alone, sufficient to support a reasonable inference that he stole the vehicle. Furthermore, we emphasize that in Buntin's case, even more time had elapsed between the theft and the possession of the stolen property than in either *Kidd* or *Gibson.* Finally, we also note that the State presented no evidence that Buntin was familiar with or in close proximity to the vehicle at the time of its taking. *See Allen,* 743 N.E.2d at 1230.

Therefore, despite the State's showing that Buntin exerted control over a stolen vehicle, the facts do not support the conclusion that the vehicle was *recently* stolen property or the inference therefrom that Buntin committed actual theft of the vehicle. *See Brown,* 827 N.E.2d at 153. Thus, since Buntin was charged with the offense of auto theft, and not with the offense of possessing stolen property, we conclude that the evidence is insufficient to sustain his conviction. Accordingly, we reverse the judgment of the trial court and vacate Buntin's conviction for auto theft.

## II. *Sentencing*

█ Next, Buntin contends that the trial court's imposition of the maximum sentence for his theft conviction, the one resulting from his guilty plea, was improper and violative of the holding in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *reh'g denied.*

In *Blakely,* the United States Supreme Court held that the Sixth Amendment requires a jury to determine beyond a reasonable doubt the existence of aggravating circumstances used to increase the sentence for a crime above the presumptive

sentence assigned by the legislature. *Blakely*, 124 S.Ct. at 2536. Specifically, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Id.* (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435, (2000)). The Supreme Court defined this statutory maximum as "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Id.* at 2537. "In other words, the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." *Id.*

In adopting *Blakely*'s sentencing guidelines, our supreme court recently held that *Blakely*'s "statutory maximum" is our "fixed term." *Smylie v. State*, 823 N.E.2d 679, 683 (Ind.2005). Because Blakely now applies to Indiana's existing sentencing system, any aggravating circumstances used to enhance a sentence beyond the presumptive term, with the exception of prior criminal history, must be submitted to a jury and proven beyond a reasonable doubt. *Smylie*, 823 N.E.2d at 682–86.

Here, the record shows that the trial court enhanced Buntin's sentence for theft, a Class D felony, from the presumptive one and one half year sentence to a three-year sentence based on Buntin's five previous felony convictions. Therefore, the trial court appropriately enhanced Buntin's sentence in light of his prior criminal convictions evident in his pre-sentence investigation report. Accordingly, as was held in *Smylie*, such aggravators do not require submission to a jury and are not problematic under *Blakely*. Further, a single valid aggravating circumstance is sufficient to support the imposition of an enhanced sentence. *Haddock v. State*, 800 N.E.2d 242, 245 (Ind.Ct.App.2003). Thus, we affirm the trial court's sentence in regard to Buntin's conviction of theft.

## CONCLUSION

Based on the foregoing, we conclude that the evidence was insufficient to sustain Buntin's conviction for auto theft and that the trial court properly sentenced Buntin as to his conviction for theft.

Vacated in part, affirmed in part.

MAY, J., and NAJAM, J., concur.