Steven SHELBY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–0704–CR–202.

Court of Appeals of Indiana.

Oct. 24, 2007.

Anna E. Onaitis, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Following a jury trial, Appellant–Defendant, Steven Shelby, appeals his conviction and sentence for Auto Theft as a Class D felony and the trial court's finding him to be a Habitual Offender.[1] Upon appeal, Shelby challenges the sufficiency of the evidence to support his conviction and further claims that the trial court erred by rejecting certain proposed jury instructions. We reverse and remand.

## FACTS

On October 23, 2006, Euneka Reaves discovered that her grandmother's gray 1988 Buick LeSabre, which Reaves had permission to drive, was no longer in front of Reaves's residence. Neither Reaves nor her grandmother, Bobbie Dotson, had given anyone else permission to drive the car. Reaves immediately called police and reported the car stolen.

On November 7, 2006, Indianapolis Metropolitan Police Officer Daniel Bennett observed two people sitting inside a blue-gray Buick in a parking lot at East 38th and North LaSalle Streets. According to Officer Bennett, the Buick had been sitting in the same position at that location for at least two days. Officer Bennett observed that the driver appeared to be an African American male with a close haircut. His passenger appeared to have hair up in a bun or hat. Officer Bennett saw the Buick pull out of the parking lot and onto La-Salle Street. According to Officer Bennett, the Buick had a very loud muffler, and from the revving of the engine, it appeared the driver had had difficulty starting it. Officer Bennett followed the Buick at a distance of about twelve feet. Upon checking the license plate, he determined the Buick was registered as a 1988 blue Buick, so he made no further inquiry at that time. The Buick eventually turned into a driveway at 3706 North LaSalle Street. Officer Bennett observed that the house at this address appeared to be vacant, and a "For Sale" sign was in front of it. According to Officer Bennett, the Buick pulled toward the back of the house. No other cars were in the driveway. Officer Bennett drove past the house and turned around, which took approximately thirty seconds. From his position on La-Salle Street, Officer Bennett observed two

---

1. Ind.Code §§ 35–43–4–2.5; 35–50–2–8 (2006).

individuals who appeared to be the individuals from the Buick come from the rear of the house at 3706 LaSalle and knock on the front door. One individual, later determined to be Shelby, had a close haircut similar to the driver's. The other individual had a "head feature" similar to that of the passenger of the Buick. Tr. at 101.

After waiting approximately fifteen seconds, Shelby and his companion began walking north on LaSalle Street, away from the house and Buick. At that point Officer Bennett drove up to 3706 LaSalle, exited his car, and asked Shelby and his companion why they were leaving their car there. Shelby responded that it was not his car. Shelby initially denied driving the Buick as well. At some point Shelby provided Officer Bennett with his Indiana Learner's Permit.

At that time Indianapolis Metropolitan Police Department Sergeant Sandra Storkman arrived. Upon checking the vehicle identification number (VIN) against the license plates, Sergeant Storkman discovered they did not match and, further, that the Buick was the stolen Buick belonging to Dotson. Upon arresting Shelby, Officer Bennett looked inside the car and observed that the steering column was broken. Officer Bennett testified to recalling that a butter knife was on the floorboard in the front of the car. Additionally, the back seat was filled with trash and contained a stereo speaker. After Officer Bennett read Shelby his Miranda warnings, Shelby admitted driving the car.

Officer Bennett found no keys to the vehicle, either on Shelby's person or in the car. Upon conducting a pat-down search of Shelby, Officer Bennett found nothing which could have been used to start the car.

On November 9, 2006, Shelby was charged with auto theft. The case was tried to a jury on January 17, 2007. On that date, the State also filed an information alleging Shelby to be a habitual offender. During trial, defense counsel proffered jury instructions stating that, when a considerable amount of time has passed between the theft and arrest, there must be some showing that the defendant has had exclusive possession of the property during that time. Defense counsel also proffered proposed jury instructions indicating that the unexplained possession of stolen property may be sufficient to support an auto theft conviction, but such inference is permitted only when the property was recently stolen. The trial court refused these instructions. The trial court did, however, instruct the jury on the lesser-included offense of conversion, as defense counsel had requested. The jury subsequently found Shelby guilty of auto theft.

On March 13, 2007, Shelby pled guilty to the habitual offender allegation. That same date, the trial court sentenced Shelby to consecutive sentences of 545 days on the auto theft conviction and 1285 days on the basis of his being a habitual offender, with the sentences to be served in the Department of Correction. This appeal follows.

## DISCUSSION AND DECISION

Shelby claims on appeal that the evidence was insufficient to support his auto theft conviction. Specifically, Shelby argues that the State presented no evidence demonstrating he had exclusive possession of the Buick during the time since it was reported stolen or that he knowingly or intentionally exerted unauthorized control with the intent to deprive Dotson of its value. The State responds that it was not required to make such a showing of exclusive possession because its theory at trial was merely that Shelby exercised unauthorized control over the car by driving it, not

that he had originally stolen the vehicle himself.

■ We find it necessary to first address the State's response. To convict Shelby of auto theft, the State was required to prove Shelby "knowingly or intentionally exert[ed] unauthorized control over the motor vehicle of another person, with intent to deprive the owner of . . . the vehicle's value or use." Ind.Code § 35–43–4–2.5(b). The State's theory on appeal is that Shelby's mere control over what the evidence demonstrates he likely knew to be a stolen car was adequate to sustain a conviction for auto theft. In support of this theory, the State points to *Gibson v. State*, 533 N.E.2d 187, 189–90 n. 2 (Ind.Ct. App.1989), wherein a panel of this court indicated in dicta that the circumstantial evidence which sustained a conviction for auto theft could arguably also sustain a conviction for auto theft charged under the theory that the defendant knew the vehicle was stolen when he drove it. We acknowledge this dicta and observe that a plain reading of Indiana Code section 35–43–4–2.5 would not discourage this theory. Indeed, an individual who knowingly drives a stolen car is exercising unauthorized control, regardless of whether he is the first to do so or is one in a succession of unauthorized users.

Further, while we recognize that in *Trotter v. State*, 838 N.E.2d 553 (Ind.Ct. App.2005), and *Buntin v. State*, 838 N.E.2d 1187 (Ind.Ct.App.2005), this court overturned auto theft convictions under the theory that the State was required to establish the defendants were the original "thieves" and not merely exercising control over a stolen car, those cases rested largely upon the Indiana Supreme Court's analysis in *Kidd v. State*, 530 N.E.2d 287, 288 (Ind.1988). In *Kidd,* quite in contrast to *Trotter, Buntin,* and the case at hand, the Supreme Court was unwilling to uphold a conviction for *burglary* when the defendant was found in possession of stolen property multiple days after it was reported stolen. The court specifically did *not* say that a conviction for theft similarly could not be upheld on the evidence. Indeed, the *Kidd* court specifically noted the defendant had not been charged under the theft/possessing-stolen-property statute, Indiana Code section 35–43–4–2, suggesting its analysis would have been different under those circumstances. *See* 530 N.E.2d at 288. We are therefore not convinced that the *Kidd* court's holding supports the reasoning that a defendant may not be convicted of theft when the evidence demonstrates he was exercising control over stolen property.

Nevertheless, in spite of the State's arguable support for its theory of prosecution, we are unable to reconcile the *Gibson* court's alternative theory of auto theft with the longstanding rule as articulated in *Muse v. State*, 419 N.E.2d 1302, 1304 (Ind. 1981), requiring, for purposes of supporting a theft conviction in cases of considerable lapses of time, a showing that the defendant had exclusive possession of the stolen property during the period of time since the theft occurred. This requirement appears to be fundamentally incompatible with the State's and the *Gibson* court's alternative interpretation of auto theft allowing for the mere knowing exercise of control—at any time—over the stolen property. Accordingly, we decline to apply the State's interpretation of the offense of auto theft.

Upon reviewing the sufficiency of the evidence to support a conviction, we will neither reweigh the evidence nor judge the credibility of the witnesses. *Muse,* 419 N.E.2d at 1304. Rather we will look only to that evidence most favorable to the State and all reasonable inferences to be drawn therefrom. *Id.* If there is substan-

tial evidence of probative value to support the conclusion of the trier of fact, the verdict will not be overturned. *Id.* On review, this court does not have to find that circumstantial evidence is adequate to overcome every reasonable hypothesis of innocence but only that an inference may reasonably be drawn therefrom which supports the finding of the jury. *Id.*

■ The mere unexplained exclusive possession of recently stolen property will sustain a conviction of theft and burglary. *Gibson,* 533 N.E.2d at 188. However, where any considerable length of time has elapsed from the time of the theft to the time of the arrest there must be some showing that the defendant has had the exclusive possession of the property during that period of time. *Muse,* 419 N.E.2d at 1304; *Ward v. State,* 260 Ind. 217, 219, 294 N.E.2d 796, 797 (1973). In cases where the defendant is found to be in possession of property which has not been recently stolen, and there has been no showing of exclusive possession of the property during the relevant time frame, this court may also consider additional evidence tending to support the defendant's conviction. *See Gibson,* 533 N.E.2d 187, 189–90. Both exclusive possession of stolen goods and knowledge that they were stolen may be proven by circumstantial evidence. *Muse,* 419 N.E.2d at 1303–04. To determine whether property was recently stolen, we must examine the length of time between the theft and possession as well as circumstances such as the defendant's familiarity or proximity to the property at the time of the theft and the character of the goods. *Gibson,* 533 N.E.2d at 188–89.

In *Muse,* the defendant was found in possession of a van more than three months after it was reported missing. 419 N.E.2d at 1303. The van was parked in front of the defendant's house, and the original owner's registration was still inside the glove compartment. Additionally, a rent receipt and several food vouchers in the defendant's name were found inside the van, one dated eighteen days after the van was reported stolen, and the others dated one month and six days after it was stolen. The original license plate was under the van's passenger seat, and the defendant was in possession of the owner's distinct van key. In upholding the defendant's conviction for auto theft, the Supreme Court observed that, while there must be a showing of the defendant's exclusive possession in the time since the van was originally stolen, the rent receipts and food vouchers supported an inference of such possession. As additional support for its holding, the court noted that the existence of the owner's registration and the hidden license plate supported the inference that the defendant knew the van was stolen.[2]

In *Gibson,* 533 N.E.2d at 189, this court determined that a defendant's auto theft conviction could not be sustained on the evidence that he was exercising control over a stolen vehicle two days after it was stolen. However, given the additional circumstances in *Gibson* of the defendant's possession of a screwdriver to operate a broken ignition, his refusal to identify himself, and his claim not to have been in the car, the *Gibson* court concluded his convic-

---

**2.** While the *Muse* court relied upon additional evidence suggesting the defendant knew the van was stolen, the statute under which the defendant was convicted did not distinguish between the crimes of theft and receiving stolen property. 419 N.E.2d at 1303–04 (citing Ind.Code § 35–43–4–2 (Burns 1979 Repl.)). The current statute does distinguish between the crimes of theft and receiving stolen property. *See* Ind.Code § 35–43–4–2.5. In any event, in Muse there was a showing of exclusive possession during the relevant period of time.

tion did not lie wholly upon his control over the vehicle and therefore found sufficient evidence to convict him of auto theft. 533 N.E.2d at 189–90.[3]

■■ Here, there was a fifteen-day delay between the theft of the Buick and Shelby's possession of it. Under the above authority, Shelby's possession of the Buick would not be characterized as recent. His conviction therefore may not be sustained on the mere fact of his possession or exercise of control over the Buick. In spite of the requirement in *Muse* that the State make some showing that Shelby exclusively possessed the Buick during the period of time since the theft more than two weeks earlier, the State provided no evidence suggesting Shelby had exclusively possessed the Buick from the time it was stolen. Indeed, based upon Officer Bennett's testimony that he had observed the Buick in the same position in a parking lot for two days prior to observing Shelby use it, the evidence suggested the very opposite, that Shelby had *not* had exclusive possession. Further, none of the many items or trash found in the Buick had any demonstrable connection to Shelby, nor did the State allege any. While the State points to a butter knife found on the floor of the Buick and claims Shelby used it to start the car, no connection between Shelby and the butter knife was ever established.

Further still, an evaluation of the circumstances does not support the conclusion that Shelby committed auto theft. The Buick was stolen a full fifteen days before Shelby was found exercising control over it. The car had sat in the same position in a parking lot where stolen vehicles are often parked for two days before Shelby was discovered driving it. When asked, Shelby provided Officer Bennett with his identification, he admitted the car was not his, and he ultimately admitted driving it. No tools for purposes of operating the car were found on Shelby's person, and the butter knife the State alleges Shelby used to operate the Buick was never linked to him. These circumstances are simply inadequate to buttress the fact of Shelby's decidedly non-recent possession of the Buick to sustain his conviction for auto theft.

Having found the evidence insufficient to support Shelby's conviction for auto theft, we find it unnecessary to reach Shelby's challenge to the trial court's rejection of his proposed jury instructions. Accordingly, we reverse and remand to the trial court with instructions to vacate Shelby's conviction for auto theft and the resulting habitual offender finding resting upon that conviction.

The judgment of the trial court is reversed, and the cause is remanded with instructions.

NAJAM, J., and MATHIAS, J., concur.

---

**3.** This court has since held, in *Buntin v. State,* 838 N.E.2d 1187, 1191 (Ind.Ct.App.2005), and *Trotter v. State,* 838 N.E.2d 553, 557–58 (Ind.Ct.App.2005), that five-day delays between the date a car was reported stolen and the defendant's being found exercising control over it were sufficiently lengthy such that the defendant's mere control over the car, without additional corroborating evidence, could not support his conviction for auto theft.