# In the Iowa Supreme Court

No. 24–0169

Submitted February 18, 2026—Filed March 20, 2026

**State of Iowa,**

Appellee,

vs.

**Dillon Michael Heiller,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Allamakee County, John Bauercamper, senior judge.

The defendant appeals two theft convictions, arguing that the evidence was insufficient to support the jury's verdict. **Decision of Court of Appeals Vacated; District Court Judgment Affirmed in Part, Reversed in Part, and Case Remanded.**

McDonald, J., delivered the opinion of the court, in which all justices joined.

Shea M. Chapin (argued), The Chapin Center, PLC, Dubuque, for appellant.

Brenna Bird, Attorney General, and Martha E. Trout (argued) and David Banta, Assistant Attorneys General, for appellee.

Jacob A. Sarasin, Thomas D. Story, Shefali Aurora, and Rita Bettis Austen of ACLU of Iowa Foundation, Inc., Des Moines, for amicus curiae American Civil Liberties Union of Iowa.

**McDonald, Justice.**

Dillon Heiller was convicted of theft in the second degree and theft in the first degree, in violation of Iowa Code sections 714.1(1), 714.2(1), and 714.2(2) (2023), arising out of the theft of two motor vehicles. One of the convictions arises out of the theft of an automobile in Wisconsin, and Heiller challenges the state's ability to prosecute him for that offense under Iowa's criminal jurisdiction statute. *See* Iowa Code § 803.1. He also challenges the sufficiency of the evidence supporting both theft convictions. We do not have to resolve Heiller's challenge under the criminal jurisdiction statute because there is insufficient evidence supporting the conviction for the theft of the car in Wisconsin. We conclude there is sufficient evidence to sustain the second theft conviction, which undisputedly occurred in Iowa.

I.

The trial record established the following. On the evening of June 18, 2023, Dillon Heiller went for drinks at the Waterville Bar in Waterville, Iowa. Dave Christianson, a local resident, observed Heiller enter the bar wearing a hat and a bandana, with one gloved hand and the other wrapped in some type of material. Christianson was familiar with the patrons, and their respective vehicles, that frequented the bar, and he noticed an unfamiliar white or silver SUV with Wisconsin license plates parked outside. He assumed the SUV was associated with Heiller.

Bartender Kaylee Sorum was working that evening. She saw Heiller pull into the parking lot in the white or silver SUV. According to Sorum, the SUV had a broken-out passenger window covered in plastic. She believed it had Wisconsin plates. Sorum's description of Heiller was similar to Christianson's: Heiller was wearing a black shirt, an Iowa Hawkeyes cap, a bandana, and a fingerless glove

on one hand, with the other hand wrapped with a black wrap. Sorum remembered Heiller from that night because he repeatedly asked other patrons for a ride. She informed him that no one would be driving him anywhere and that he would need to leave the bar in whatever way he had arrived. Sorum testified that Heiller left the bar between 11 and 11:30 p.m.

Near midnight, Allamakee County Sheriff's Deputy Ross Kolsrud was on patrol traveling westbound on Highway 76, near Waukon, when he encountered a silver SUV traveling eastbound at above the posted speed limit. As the two vehicles approached one another, Kolsrud flashed his patrol lights as a "friendly reminder to slow down." Instead of slowing, the SUV accelerated. When Kolsrud checked the speed on his front radar, it clocked the SUV in the upper 60s. The rear radar recorded the vehicle's speed as increasing to 75 miles per hour. Kolsrud turned around to pursue the vehicle. Despite accelerating to as high as 96 miles per hour, he lost sight of the SUV. Deputy Kolsrud searched Buckskin Road, Sugar Road, and the surrounding areas, but the SUV never reappeared.

Between 4:15 and 4:30 a.m. on June 19 Kenneth Koozer woke up and checked his game camera mounted near his driveway. Koozer lived on Buckskin Road. Around midnight, Koozer's game camera recorded a small SUV speeding through his property. Koozer went outside to investigate and discovered tire tracks running through his property. The tracks continued down a steep embankment, across the narrow strip before a pond, and into some timber, where Koozer found a silver Chevy Captiva crashed into a tree. Koozer testified that the vehicle's passenger-side window was broken and taped over with plastic. The vehicle had Wisconsin plates. He identified a gas can, a cellphone, a bandana, a hat, and a small purse-like item inside the vehicle.

That same morning, approximately half a mile from Koozer's residence, Robert Lloyd woke up, looked outside, and immediately noticed that his shed door, which was always closed at night, was fully open. His 2023 John Deere Gator was missing. Lloyd reported the theft to the police department. He learned from the department that the Gator had been found totaled on Brady Drive, approximately a mile and a half from his property. The Gator, valued at over $30,000, had evidence of blood on the interior passenger seat and vent area, as well as a bloodied bandana hanging from the glove compartment area. Heiller's DNA matched the blood on the bandana.

Not far from the location where the Gator was found on Brady Drive, Bryton Meyer began his morning. As he stepped outside to leave for work, he realized that his silver 2013 Chevrolet Impala, which he typically left in the driveway, was missing. He conducted a brief search of the immediate area and discovered a single set of footprints in the dew walking up the driveway from the area where the car had been parked. He then reported the theft to the police. Meyer informed officers that his Smith & Wesson nine-millimeter handgun was in the missing car.

Deputy Steven Wilkes responded to Koozer's call regarding the wrecked Captiva. He ran the vehicle identification number on the Captiva. The vehicle came back as stolen out of Campbell, Wisconsin. It was first reported stolen by its owner on April 6, 2023. Deputy Wilkes then went and saw the wrecked Gator, and he began to suspect that whoever crashed the Captiva went and stole the Gator, crashed the Gator, and then went and stole Meyer's Impala next.

Around 6:30 on the morning of the 19th Heiller arrived at a Casey's General Store in Monona, driving a white 2005 GMC Envoy with Minnesota license plates. Anissa Rohde was employed by Casey's at the time, and she

helped Heiller at the register. She noticed blood on Heiller's face and arm. Another witness saw Heiller at the Casey's and found his appearance troubling enough to comment on it to Rohde. Rohde and her coworker contacted law enforcement. Heiller left before law enforcement arrived.

More than three months later, on October 1, Heiller was arrested after being found in possession of a different stolen vehicle. His theft of that vehicle was charged in a separate case, and that case is the subject of a different appeal. In this case, Heiller was charged with second-degree theft relating to the Captiva, first-degree theft relating to the Gator, and second-degree theft relating to the Impala. Each theft was charged under Iowa Code section 714.1(1) on a theory of theft by taking. The State also charged Heiller with being a felon in possession, which arose out of the possession of the firearm Meyer kept in the stolen Impala.

An Allamakee County jury found Heiller guilty of theft of the Captiva as charged in count 1 and theft of the Gator as charged in count 2, but the jury acquitted him of theft of the Impala, count 3, and being a felon in possession of a firearm, count 4.

Heiller timely filed his notice of appeal, and we transferred the case to the court of appeals. On appeal, he argued that the State lacked territorial jurisdiction to prosecute him for the theft of the Captiva. He also challenged the sufficiency of the evidence supporting his convictions. The court of appeals, *en banc*, held that error was not preserved with respect to Heiller's territorial jurisdiction challenge and held that the evidence was sufficient to support both convictions. One judge dissented. We granted Heiller's application for further review.

II.

We start with Heiller's challenge to the sufficiency of the evidence supporting each of the convictions because that challenge could provide him greater relief due to double jeopardy protections. *See Burks v. United States*, 437 U.S. 1, 18 (1978) (holding that the "Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient" and that the required remedy "is the direction of a judgment of acquittal"); Iowa Code § 816.1 ("A conviction or acquittal by a judgment upon a verdict shall bar another prosecution for the same offense, notwithstanding a defect in form or substance in the indictment on which the conviction or acquittal took place."); *State v. Brimmer*, 983 N.W.2d 247, 255 (Iowa 2022) (looking at "sufficiency of the evidence first, as it could provide [the defendant] greater relief"); *State v. Kern*, 831 N.W.2d 149, 158 (Iowa 2013) ("We first address whether the State introduced sufficient evidence for a fact finder to find [the defendant] guilty beyond a reasonable doubt. We address this issue first because the Double Jeopardy Clause would not permit a retrial of the charges if there was insufficient evidence of guilt presented at trial."); *see also United States v. Robinson*, 87 F.4th 658, 667 n.1 (5th Cir. 2023) ("[S]ufficiency challenges should be disposed of first . . . for double-jeopardy purposes."); *United States v. Gonzalez-Sanchez*, 825 F.2d 572, 588 (1st Cir. 1987) (stating that an appellate court "must consider the defendant's challenge to [the] sufficiency of the evidence to ensure that the prohibition against double jeopardy is upheld" regardless of any other errors).

A.

In Iowa, appellate courts measure the sufficiency of the evidence against the marshaling instructions if the defendant does not object to them. *See State v. Mathis*, 971 N.W.2d 514, 518 (Iowa 2022). In determining whether the evidence

is sufficient to support a jury's verdict, we view the evidence in the light most favorable to the state. *See State v. Hawkins*, 27 N.W.3d 562, 568 (Iowa 2025). The evidence, viewed in the light most favorable to the state, must be substantial and must raise more than mere "suspicion, speculation, or conjecture." *State v. Miller*, 4 N.W.3d 29, 34 (Iowa 2024) (quoting *State v. Huser*, 894 N.W.2d 472, 490 (Iowa 2017)).

### B.

### 1.

The defendant did not challenge the marshaling instruction with respect to count 1, relating to the theft of the Captiva. The unobjected-to marshaling instruction required the State to prove:

> 1. On or about the 19th day of June, 2023, the defendant took possession or control of 2012 silver Chevrolet Captiva. . . .
>
> 2. The defendant did so with the intent to deprive the owner of the 2012 silver Chevrolet Captiva. . . .
>
> 3. The property, at the time of the taking, belonged to or was in the possession of its owner.

As set out in the jury instruction, the criminal conduct proscribed here is theft by taking. The theory of theft charged matters because the Code provides alternative means of committing the crime of theft. *See* Iowa Code § 714.1. For example, Iowa Code section 714.1(4) criminalizes theft by exercising control over stolen property, but that theory of theft was not charged in this case. Instead, the State charged Heiller with theft by taking. *See State v. Hanneman*, No. 17–1147, 2018 WL 3650311, at *3 (Iowa Ct. App. Aug. 1, 2018) ("The theft-by-taking statute is construed narrowly to apply to a person's acquisition of property . . . ."); *State v. Hershberger*, 534 N.W.2d 464, 466 (Iowa Ct. App. 1995) ("A person cannot commit theft by taking without also being in possession of

stolen property. But they represent different points of time within one crime." (citation omitted)). In *State v. Nall*, 894 N.W.2d 514, 524 (Iowa 2017), we explained that "[i]n order to '[take] possession or control' under [Iowa Code section 714.1(1)], a person must acquire property without the consent or authority of another." (Second alteration in original.) We emphasized that "[t]his conclusion affirms the importance of the method of obtaining property" so as not to "transform[] our theft-by-taking statute into a catch-all provision." *Id.*

Theft by taking is not a continuing offense. *See State v. Hippler*, 545 N.W.2d 568, 571 (Iowa 1996) (en banc); *State v. Schmitz*, 610 N.W.2d 514, 517 (Iowa 2000) (en banc). Instead, theft by taking occurs at a single moment in time and is complete the instant a person takes possession or control of the property of another with the requisite intent. *See Schmitz*, 610 N.W.2d at 517; *State v. Schminkey*, 597 N.W.2d 785, 789 (Iowa 1999) (en banc) (holding that the state must "pro[ve] that the defendant acted with the specific purpose of depriving the owner of his property," which "requires a determination of what the defendant was thinking when an act was done"); *see also State v. Donaldson*, 663 N.W.2d 882, 886 (Iowa 2003) (stating that " 'possession or control' begins and a theft is completed when the actor secures dominion over the object or uses it in a manner beyond his authority"); *State v. Gray*, 505 S.W.3d 160, 166 (Ark. 2016) (" '[O]btain' connotes a singular, discrete taking of possession that occurs at a given time."); *State v. Taylor*, 349 P.3d 696, 703 (Utah 2015) ("The key actus reus elements of the offense—'obtain[ing] or exercis[ing]'—are discrete acts that are satisfied instantaneously. And the commission of the crime is complete when a person obtains or exercises that control with the requisite intent." (alterations in original) (footnote omitted)).

Because theft by taking is complete at the moment of acquisition, evidence of later possession is sufficient to establish theft by taking only to the extent the later possession supports a reasonable inference that the defendant committed the earlier act of taking. This does not mean that direct evidence of the defendant physically removing property from its rightful owner is required to support a conviction for theft by taking. As always, "[d]irect and circumstantial evidence are equally probative" of the defendant's guilt. *State v. Jones*, 967 N.W.2d 336, 342 (Iowa 2021). However, the strength, and thus reasonableness, of the inference of taking to be drawn from the fact of later possession is dependent upon the temporal proximity between the taking and the possession.

When the defendant is found in possession of the stolen property close in time to the taking, the inference that the defendant in possession of the stolen property was also the person who took the stolen property is stronger and more concrete. For example, in *State v. Hershberger,* 534 N.W.2d 464, the defendant was convicted pursuant to section 714.1(1) for the taking of a motorcycle found in his possession on the same day it was reported stolen. *Id.* at 465. On appeal, the defendant argued that the evidence was insufficient to support his conviction because the state proved only post-theft possession, not participation in the taking. *Id.* The court of appeals disagreed, holding that the defendant's possession of the stolen motorcycle soon after the theft was reported was sufficient to support the inference that he took it. *Id.* at 465–66; *see also Hanneman,* 2018 WL 3650311, at *3 (affirming a theft by taking conviction because the state presented substantial circumstantial evidence that the defendant took the motorcycle, including the fact that he was found in possession of the motorcycle when stopped by police for driving without a license plate on the same day the motorcycle was reported stolen); *State v. Eppers,*

3 P.2d 989, 992–93 (Or. 1931) (holding that the defendant's possession of a stolen cow only two weeks after the taking was sufficiently recent for a jury to infer that he was the thief).

Conversely, when the defendant is found in possession of the stolen property remote in time from the taking, the inference that the defendant in possession of the stolen property was also the person who took the stolen property is weaker and more speculative. For example, in *Warren v. State*, this court reversed a defendant's conviction for stealing goods that were found in his possession eighteen or nineteen months after they were stolen. 1 Greene 106, 107 (Iowa 1848). We explained that mere possession of stolen goods may in some cases support an inference that the possessor committed the taking, but the strength and reasonableness of the inference depended on the passage of time and the presence of additional evidence. *See id.* at 109–10. "[W]hen the goods are found in the possession of a person[] within a short period after" a theft, the inference of guilt is strong, even in the absence of other evidence, because there has been no meaningful opportunity for the property to pass to another. *Id.* at 109. Mere possession of stolen property eighteen or nineteen months after it was taken was not sufficiently recent to support an inference of initial taking, particularly when the property was easily transferable. *See id.* at 109–10.

This case falls somewhere between *Hershberger* and *Warren.* The record established that the Captiva was reported stolen in Wisconsin on April 6, 2023. There was no evidence regarding the circumstances of the taking. The jury found that Heiller was in possession of that same vehicle approximately two and one-half months later, on June 18, 2023. The question is whether the mere possession of a stolen vehicle more than two months after it was taken, standing

alone, is sufficient evidence to establish that the defendant was in fact the person who took the vehicle.

Courts that have considered possession of stolen property months after a theft as sufficient evidence of an initial taking have done so only when that possession was combined with additional evidence to support an inference of taking. For example, the defendant in *Robertson v. State* was caught driving a stolen vehicle three months after it was reported stolen, and he was convicted of auto theft. No. 24A-CR-2932, 2025 WL 3677617, at *1–3 (Ind. Ct. App. Dec. 18, 2025). On appeal, he argued that evidence of his possession was insufficient to support his theft conviction. *Id.* at *2–3. The Indiana Court of Appeals agreed with the defendant, stating:

> [M]ere unexplained possession of recently stolen property standing alone does not automatically support a conviction for theft. Rather, such possession is to be considered along with the other evidence in a case, such as how recent or distant in time was the possession from the moment the item was stolen, and . . . the circumstances of the possession[.]

*Id.* (second alteration in original) (quoting *Fortson v. State*, 919 N.E.2d 1136, 1143 (Ind. 2010)). However, the court held that the state produced enough circumstantial evidence beyond mere possession to support a conviction under Indiana's auto theft statute. *Id.* at *3–4. This evidence included the defendant's false stories and explanations to the police, evidence that he had possessed the car at earlier points in time prior to his arrest and closer to the taking, and testimony from the owner of the vehicle. *Id.*; *see also Muse v. State*, 419 N.E.2d 1302, 1304 (Ind. 1981) (possession of a stolen van three weeks after the theft plus additional evidence of exclusive possession in the interim was sufficient to support the defendant's conviction); *State v. Aragon*, 788 P.2d 932, 937 (N.M. Ct. App. 1990) ("Possession of stolen property, standing alone, is not enough to

justify a conviction . . . . Where other circumstances are present linking defendant with the theft, however, possession of the stolen property combined with the other circumstances can justify such a conviction." (citations omitted)). No such additional evidence was presented here. The only evidence presented in support of Heiller's conviction for the taking of the Captiva was his possession of the vehicle more than two months after it was reported stolen. The State offered no evidence that Heiller possessed the car prior to June 19, that he was present near the location of the theft around the time it was reported stolen in Wisconsin, or that anything occurred during the intervening two-month period linking him to the original taking. We conclude that Heiller's mere possession of the Captiva over two months after it was reported stolen cannot, without more, support his conviction for theft by taking of the Captiva. Without more, the passage of time rendered the inference mere suspicion, speculation, and conjecture, which is insufficient to sustain the conviction. *See Miller,* 4 N.W.3d at 34; *see also Turner v. State,* 39 S.E. 863, 863–64 (Ga. 1901) (reversing a larceny conviction because it was based solely on the defendant's possession of stolen property approximately fifteen months after it was taken); *Shelby v. State,* 875 N.E.2d 381, 386 (Ind. Ct. App. 2007) (holding that evidence insufficient where a "Buick was stolen a full fifteen days before [the defendant] was found exercising control over it"); *Jones v. State,* 26 Miss. 247, 249–50 (Miss. 1853) (reversing a conviction after the defendant was found in possession of a stolen saddle five or six months after it was taken because the passage of time weakened the probability that the later possessor was also the original thief); *State v. Matheay,* 82 S.E.2d 408, 409 (N.C. 1954) (holding that evidence insufficient to prove automobile theft where the defendant was found in possession of car eighty-two days after it was reported stolen and stating that "the time that elapsed . . . between the theft and

the arrest of the defendant was too long under the circumstances . . . to infer guilt on the part of the defendant"); *Sutherlin v. State,* 682 S.W.2d 546, 548–49 (Tex. Crim. App. 1984) (en banc) (holding that evidence insufficient and stating that "the inference of guilt that might be drawn from mere possession of stolen property necessarily greatly diminishes as time elapses"); *Menchaca v. State,* 125 S.W. 20, 21 (Tex. Crim. App. 1910) (holding that possession of stolen property three and a half months after the burglary occurred was "too remote" to support a jury inference that the defendant possessor was "the party who entered the house and secured the property").

2.

The State requests that, if the court finds the evidence insufficient to sustain the conviction for theft of the Captiva, we remand the case for an entry of judgment on the lesser included offense of operating a motor vehicle without the owner's consent. The unobjected-to marshaling instruction for that offense provided that the State would have to prove:

> 1. On or about the 19th day of June, 2023, the defendant intentionally took possession or control of an automobile belonging to the respective owner. . . .

> 2. The possession or control was without consent of the respective owner.

Like Iowa Code section 714.1(1), section 714.7 proscribes the act of taking possession or control of someone's property. Unlike theft, however, the crime of operating a motor vehicle without the consent of the owner does not require proof of the specific intent to permanently deprive the owner of the property but instead requires proof that the taking was done without the owner's consent. *See* Iowa Code § 714.7; *State v. McCormack,* 293 N.W.2d 209, 211 (Iowa 1980). The primary difference between the two offenses lies in the *mens rea* requirement,

not the *actus reus* requirement. As the jury instruction demonstrates, the State is still required to prove that the defendant is the person who initially took the vehicle. *See State v. Jackson*, 4 N.W.3d 298, 313 (Iowa 2024) ("Jackson's blackout while driving, even if true, had no bearing on whether he *initially* took possession and control of the vehicle without the owner's consent." (emphasis added)). As discussed above, however, there is insufficient evidence that Heiller took the vehicle without the owner's consent. We thus cannot remand for entry of judgment on the lesser included offense.

3.

Because we have concluded that there is insufficient evidence in support of Heiller's conviction for theft in the first degree with respect to the Captiva, we need not address Heiller's territorial jurisdiction challenge to the conviction.

C.

Heiller next challenges the sufficiency of the evidence supporting his conviction for first-degree theft of the Gator. The marshaling instructions were not objected to, and they serve as the law of the case for the purpose of determining the sufficiency of the evidence. The marshaling instruction provided that the State was required to prove:

> 1. On or about the 19th day of June, 2023, the defendant took possession or control of the John Deere Gator. . . .
>
> 2. The defendant did so with the intent to deprive Robert Lloyd of the John Deere Gator. . . .
>
> 3. The property, at the time of the taking, belonged to or was in the possession of Robert Lloyd.

Heiller argues that the evidence was insufficient to support his conviction for theft by taking of the Gator because there is insufficient evidence that he took

the Gator, and there is insufficient evidence that he intended to permanently deprive the owner of the Gator.

There is substantial evidence that Heiller took the Gator. Two witnesses saw Heiller at the Waterville Bar on the night in question. He was associated with the distinctive Captiva because of the broken-out passenger window. Later that night, Koozer's game camera captured the same car driving through his property, and the same car was found on the property, crashed into a tree. The Gator was stolen from Lloyd's residence, within walking distance of the Koozer residence. The Gator was found wrecked not far from Lloyd's residence with blood inside it and a bloodied bandana in it. Witnesses observed Heiller with that bandana earlier in the evening, and the blood on the bandana was a positive DNA match to Heiller. And Heiller appeared a few hours later at a Casey's with visible injuries and blood on his face and arm. From this evidence, a reasonable jury could conclude that Heiller took the Gator.

On the second element, Heiller argues that the evidence was insufficient to prove his intent to permanently deprive Lloyd of the Gator. Heiller is correct that theft requires proof of the specific intent to permanently deprive the owner of the property at issue. *See Schminkey*, 597 N.W.2d at 791; *State v. Morris*, 677 N.W.2d 787, 788 (Iowa 2004) (per curiam). We have recognized that when a vehicle is wrecked shortly after it is taken, the evidentiary basis for inferring an intent to permanently deprive is limited because there has been insufficient time to show the defendant intended more than a brief joyride. *See Schminkey*, 597 N.W.2d at 791; *Morris*, 677 N.W.2d at 788. Here, however, the marshaling instruction did not require proof of permanent deprivation. Because the instruction was not challenged, it became the law of the case for the purpose of reviewing the sufficiency of the evidence. We therefore consider only whether the

evidence was sufficient for a reasonable jury to find Heiller possessed the intent to deprive Lloyd of his Gator.

The evidence is sufficient to support the conviction as instructed. The jury could reasonably infer intent from the sequence of events and Heiller's conduct that night. Heiller sped away from law enforcement in a stolen vehicle, wrecked the vehicle, and fled the scene of the accident. *See State v. Miller*, No. 16–2110, 2018 WL 1099580, at *5 (Iowa Ct. App. Feb. 21, 2018) (finding sufficient evidence of intent where "[t]he jury could have deduced that [the defendant] wanted to take someone else's vehicle to avoid detection"). He drove the Gator recklessly and without regard for the owner's interest. *See Shoemaker v. State*, No. 22–2107, 2024 WL 2317501, at *6 (Iowa Ct. App. May 22, 2024) ("The reckless operation of a get-away vehicle can satisfy the intent element of theft."). Taken together, the evidence was sufficient for a reasonable jury to find that Heiller intended to deprive Lloyd of the Gator.

III.

We vacate Heiller's conviction and sentence on count 1, theft in the second degree, arising out of the alleged theft of the Chevy Captiva, and we affirm Heiller's conviction on count 2, theft in the first degree, arising out of the theft of the John Deere Gator. We remand this matter for entry of judgment of acquittal on count 1. A new sentencing hearing with the defendant present is not required. *See* Iowa R. Crim. P. 2.27(3) (providing that the "defendant's presence is not required for a reduction of sentence").

**Decision of Court of Appeals Vacated; District Court Judgment Affirmed in Part, Reversed in Part, and Case Remanded.**